618 So.2d 157 (1993)
Vernon AMOS, Appellant,
v.
STATE of Florida, Appellee.
No. 76061.
Supreme Court of Florida.
March 18, 1993.
Rehearing Denied June 1, 1993.
*158 Bert Winkler, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Vernon Amos appeals his convictions of two counts of first-degree murder, an attempted first-degree murder, four counts of robbery with a firearm, and one count of aggravated assault with a firearm, and his sentences, including a sentence of death for one of the murders. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. This case has had an extensive and tortuous history. Amos has been involved in four separate trials. During this case's history, Amos has had different counsel and has also appeared pro se. The convictions and sentences of both Amos and his codefendant, Leonard Spencer, were initially reversed by this Court in Amos v. State, 545 So.2d 1352 (Fla. 1989), and Spencer v. State, 545 So.2d 1352 (Fla. 1989), because of the restrictive means utilized in selecting the petit jury for those trials. In October, 1989, a second trial was held for both defendants and resulted in a hung jury. A third trial commenced in November, 1989, at which Spencer was convicted of all counts. The third trial resulted in a hung jury as to Amos. Amos's fourth trial commenced in January of 1990 and is the subject of this appeal.
We find that, due to the multiple errors that occurred during the guilt phase of this trial, we must once again reverse Amos's *159 convictions and order a new trial. Although some of the errors might be considered harmless when considered independently, we find that, when considered collectively, these errors cannot be found to be harmless beyond a reasonable doubt.
The relevant facts reflect that, on June 12, 1986, two men entered a Mr. Grocer store in West Palm Beach. The taller of the two men grabbed a customer, held a gun to his side, and ordered the customer to lie face down on the floor. The evidence established that the taller of the two men was Spencer, while the shorter man was Amos. As the customer was lying on the floor, a shot was fired, killing the store clerk. The customer also heard one of the men say, "Open the cash register." The customer was not certain which of the men made the statement. At no point did the customer see the smaller of the two men with a weapon. One of the men went over to the customer and demanded the keys to his car and his wallet. One of the men then shot the customer in each arm. Another witness, who was outside the store, observed the two men get into a yellow Ford automobile, with the shorter man entering on the driver's side and the taller man entering on the passenger's side.
The second incident occurred a short time later outside a bar located approximately one mile from the Mr. Grocer. A witness testified that, as the car in which he was riding pulled into the bar parking lot, he observed one tall black male and one white male fighting by a pickup truck over something in their hands. He stated that a short black male was standing on the other side of the truck. The witness testified that, after the shorter man grabbed the white male around the face, a shot was fired and the white male fell forward. That victim, later identified as Robert Bragman, was shot in the head and later died. The taller of the two men entered the truck on the driver's side while the other entered the passenger's side. The witness could not positively identify either of the black men and never actually saw either man with a gun.
A second witness was driving down the street when he heard a description of the two men over his police scanner. He then saw two men fitting the descriptions walking down the street near the scene of the second shooting. The taller man approached the witness's vehicle and forced the witness to exit the vehicle at gunpoint. This witness testified that the smaller man remained at the front of the car. Both men then got into the witness's car and started to drive away. The men then stopped the car, switched seats, and proceeded to drive away.
After being pursued by law enforcement officers for two hours, Amos was located in a junk yard and was arrested. Amos was interviewed and gave a lengthy statement, only a portion of which was tape-recorded. During the course of the statement, Amos admitted that he was present at the two incidents but denied shooting the victims. Because of promises made to Amos, the State did not use his statements in its case in chief but did present the tape in rebuttal to Amos's testimony in his own behalf. Furthermore, the prosecution did not present any direct evidence that Amos possessed the weapon used to kill Bragman. The prosecution presented the testimony of the medical examiner, who stated that the shot that killed Bragman could not have been fired by a person in Spencer's position at the time of the incident. The medical examiner testified that the fatal bullet could only have been fired by a person in Amos's position, given Spencer's and Amos's positions at the time the weapon was fired. In support of this testimony, the State introduced a composite of the autopsy photographs.
The defense presented the testimony of another eyewitness to the Bragman killing, who confirmed the positions of both Spencer and Amos during their struggle with Bragman. However, this witness testified that the taller of the two men (Spencer) appeared to throw something into Bragman's truck as they were attempting to leave the scene, the inference being that it was Spencer who shot the second victim. This witness also stated that he never actually saw a weapon and that the taller man's *160 motion may have been made in an effort to get into the truck.
Amos took the stand and testified that he never saw Spencer or Edward Caine, a friend of Spencer's who traveled with them from Belle Glade to West Palm Beach, with a weapon prior to arriving at the Mr. Grocer.[1] Amos testified that, as he entered the Mr. Grocer to buy cigarettes, Spencer followed him in and, as he was purchasing the cigarettes, Spencer grabbed the customer, Terry Howard, and shot the store clerk, Allen McAninch; that Spencer then ordered Amos to open the cash register and then shot Terry Howard; that Amos followed Spencer out of the store and did exactly what Spencer told him to do out of fear for his life. Amos also described how Spencer killed the second victim.
At the end of Amos's testimony, over the defense's objection, the prosecution requested that the court take a lunch recess. Simultaneously, the prosecutor requested that the court remind Amos that he "cannot talk to his attorney." The prosecutor stated that she was "concerned [that] Vernon will approach Craig [appellant's counsel] on his own." The court agreed with the State and stated that Amos could not confer with his counsel during the recess.
During the prosecution's cross-examination, the State asked Amos if he had had an opportunity to make another statement on tape and if the investigators had given him the opportunity to add to the taped statement at the time he made it. Amos answered that he had been given such an opportunity. In response, defense counsel, on redirect, attempted to have Amos explain that there were many hours that he spoke to the police that were not in fact on the tape. The State objected on the grounds that this line of questioning was beyond the scope of the cross-examination. The court sustained the objection.
The State, in rebuttal, called as a witness Edward Caine. Defense counsel moved to challenge Caine's competency to testify because of prior evidence that Caine could not "differentiate between reality" and requested a hearing to determine Caine's competency. The court denied the request for a hearing and overruled the defense's objection. Caine testified in rebuttal to Amos's statements that he was under duress and coerced by Spencer. Caine testified that Amos was involved in planning the robbery and was in possession of a firearm prior to the murders. The jury returned a verdict of guilty on all counts.
Subsequently, Amos filed a pro se motion for disqualification of the judge. Amos also moved to discharge his counsel on the ground that a conflict had arisen between them. The trial court denied the motion for disqualification but granted Amos's request to discharge his attorney. The trial court did not provide other counsel and the next day directed Amos to represent himself during the sentencing hearing. The trial court, in explaining the counsel situation to the jury, stated:
I have been asked to explain the absence of Mr. Boudreau, whom you will remember, who was Mr. Amos' attorney. Mr. Amos, in a hearing we held yesterday, indicated that he wanted to discharge Mr. Boudreau. Of course, he is aware that he is entitled to be represented by counsel, that counsel being Mr. Boudreau, who is ready, willing, and able to serve him. But he doesn't want Mr. Boudreau. And I cannot force it on him. So he is going to fly this airplane by himself. I think we caught him a little flat-footed. He has some depositions he needs to review that were delivered to him only this morning. So we are going to take a ten-minute recess. You folks get a cup of coffee, and we will be ready. And you will stay in here, and  Vernon, you read your depositions.
Amos advised the court that he could not put on any evidence without an attorney. Amos also rejected an opportunity to make argument to the jury, stating that he had not had sufficient time to prepare, had not read the depositions that he had received *161 that morning, and, consequently, could not go forward with any argument. By a vote of six to six, the jury returned a recommendation of life for the killing of the store clerk, Allen McAninch, and recommended death for the murder of Robert Bragman, by a vote of nine to three.
When the appellant appeared for sentencing, he again requested "conflict-free counsel." The request was denied and the trial judge sentenced Amos to life imprisonment with no possibility of parole for twenty-five years for the murder of the store clerk. The trial judge sentenced Amos to death for the murder of Robert Bragman and imposed life sentences for the related attempted first-degree murder charges, the robbery with a firearm charges, and the aggravated assault with a firearm charge.

Guilt Phase
Amos raises ten points on appeal. We find that three have merit and require discussion. While each of these points individually might be found to be harmless under the harmless error rule, we are unable to hold that they constitute harmless error when taken collectively. The first claim that we find to have merit is Amos's claim that the trial court improperly precluded him from consulting with his counsel during the luncheon recess. This issue arose during Amos's testimony in his own defense. After defense counsel concluded his direct examination of Amos, the prosecution requested a luncheon recess. Defense counsel objected. The trial court granted the request for a recess and the prosecution asked that "Vernon be reminded he cannot talk to his attorney, because he is on the stand, because I am concerned that Vernon will approach Craig [defense counsel] on his own." Defense counsel objected to the prohibition and the court noted that he had "never understood the rules" and asked whether there was case law on this issue. The prosecution advised that "[t]here is case law on it right on point." The trial judge then granted the prosecution's request to prohibit Amos from speaking to his counsel. The prosecutor was correct that there is case law on point, but it is contrary to her position. In Bova v. State, 410 So.2d 1343, 1344-45 (Fla. 1982), decided almost eight years before this case was tried, we held that
no matter how brief the recess, a defendant in a criminal proceeding must have access to his attorney. The right of a criminal defendant to have reasonably effective attorney representation is absolute and is required at every essential step of the proceedings. Although we understand the desirability of the imposed restriction on a witness or party who is on the witness stand, we find that to deny a defendant consultation with his attorney during any trial recess, even in the middle of his testimony, violates the defendant's basic right to counsel. Numerous courts have reached a similar conclusion.
We stress that a defendant in a criminal proceeding is in a different posture than a party in a civil proceeding or a witness in a civil or criminal proceeding. Right-to-counsel protections do not extend to civil parties or witnesses and the trial judge's actions in the instant case would have been proper if a civil party or witness had been involved.
(Citations omitted; footnote omitted.) We reaffirmed that holding in Thompson v. State, 507 So.2d 1074 (Fla. 1987). In Thompson, the court denied Thompson consultation with his attorney during a thirty-minute recess requested by the prosecution. While we held in Bova that the error was harmless because of the overwhelming evidence of guilt, in Thompson, we held: "Had the attorney-client consultation been allowed, defense counsel could have advised, calmed, and reassured Thompson without violating the ethical rule against coaching witnesses." Thompson, 507 So.2d at 1075. We found that we could not say that there was no reasonable possibility that the error did not affect the jury verdict. In this case, it was clear error for the court to prohibit Amos from speaking to his counsel during the recess period, and the prosecution precipitated the error by incorrectly advising the court on what the law is on this issue.
Amos's next claim that merits discussion concerns whether the trial court *162 erred by limiting Amos's redirect examination relating to inconsistencies between his taped statement and his testimony. The prosecution, on recross-examination, asked the following questions:
Q On the taped statement at the end, do you recall Detective Dowdell and Detective Fitzgerald giving you an opportunity to say, so you had a complete statement on the tape, if there was anything else you wanted to add to the statement?
They gave you a complete opportunity to do that; is that right? They even gave you time to think about it, a couple of minutes? Do you recall that?
A I suppose so.
Q You didn't add anything, did you?
A I don't know. It's been so long.
Q They did give you an opportunity to make another statement or add on to the statement if you wanted to and gave you a few minutes to think about it; is that right?
A Yes.
Q And you didn't; is that right?
A It was until 5:00 in the morning.
Q For the complete tape, they gave you an opportunity to add something and you didn't; is that right?
A That's right?
MS. MINDLIN: Thank you.
REDIRECT EXAMINATION
BY MR. BOUDREAU:
Q How long were you on that tape?
A I assume it was a thirty minute tape, thirty minutes on each side.
Q What I want to ask you is how many hours did you speak with them that wasn't on the tape?
MS. DUGGAN: Objection. Beyond the scope of the one question.
MR. BOUDREAU: It is relevant to their question.
THE COURT: Sustained. Who is next?
We agree with the appellant that defense counsel's question was relevant to the matter raised by the prosecution in its cross examination. While the credibility of the testimony is an issue for the jury, it is relevant that the defendant made statements during hours of interviews by the detectives that were not taped.
The next issue concerns the court's interference with defense counsel's comment during closing arguments on the prosecution's failure to call an eyewitness, who was called by the defense in its case in chief. The State, in its case in chief, called John Foster as an eyewitness to the shooting of Robert Bragman and the stealing of his truck. Foster was a passenger in a vehicle driven by Joseph Bachelor. The State did not call Joseph Bachelor as a witness. The defense, however, presented Bachelor as a witness in its case in chief. Defense counsel, in closing argument, commented that the State had tailored the evidence by not calling Bachelor in its case in chief. The court injected itself into the proceedings at that time and asked the State if it had any comment or objection. The State objected to defense counsel's remarks. The court sustained the objection, advised defense counsel that he could not blame the State for failing to call the witness. The court, on its own motion, instructed the jury as follows:
I have sustained the objection, here's why. The state and defense have equal access to these witnesses. The state has no obligation to call every single witness or produce every single item of evidence. They have an obligation to prove their case beyond and to the exclusion of every reasonable doubt. If they don't reach that burden, certainly you should find the defendant not guilty. But it is up to them when to decide when they think they have produced enough evidence.
Maybe an analogy is a crime committed in the Orange Bowl with everybody watching. You don't have to call everybody in the Orange Bowl. You can't draw an inference from a failure to call everyone who is in attendance there. OK.
We should note that Foster was an important witness for the State because he placed Amos in a position that led to the inference drawn by the medical examiner *163 that the shot that killed Bragman was fired by Amos and not Spencer. This case does not involve counsel's comments on witnesses who were not called to testify before the jury.[2] This case deals with counsel's comments regarding the testimony of two eyewitnesses and defense counsel's argument that the State was attempting to tailor the evidence when it failed to call one of the eyewitnesses, whose testimony could raise an inference that Spencer killed the second victim. We find that defense counsel's comment and argument was proper and that the trial court's action on its own motion was error. The trial court's error was then compounded by its comment to the jury.
This is a circumstantial evidence case. None of the eyewitnesses to any of the incidents could actually place the gun in Amos's hand. It is the State's theory that Amos killed Bragman because of his position at the time of the altercation in stealing Bragman's truck. While we might conclude in a different case that the errors we have identified are harmless, we find that, when taken collectively, we cannot find them harmless beyond a reasonable doubt.

Penalty Phase
With regard to the penalty phase, we believe it is also necessary to comment on the trial court's granting of Amos's motion to discharge his attorney and requiring him to proceed without counsel after Amos had requested that another attorney be appointed. No Faretta[3] inquiry was made on the record in this proceeding and the trial court required Amos to represent himself almost immediately after granting his motion to discharge his counsel. Further, the trial judge gave Amos approximately ten minutes to read depositions that had been presented to him prior to the beginning of the penalty phase that morning.
We are not unmindful that Amos is very familiar with the criminal justice system and could have been proceeding in such a manner in an attempt to frustrate his trial on these charges. Nevertheless, that does not justify the manner in which the trial judge resolved this situation. We suggest to a future trial judge that, if Amos insists on discharging his counsel, the court should proceed only after a Faretta inquiry has been conducted and with standby counsel being available for the continuation of Amos's trial.
For the reasons expressed, we find that we must again remand this cause for a new trial.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion, in which McDONALD, J., concurs.
GRIMES, Justice, concurring in part, dissenting in part.
I believe that Amos's convictions should be affirmed.
The majority's decision rests on the premise that three trial errors were committed, and that while under some circumstances each of them could be considered harmless, the cumulative effect requires reversal. Thus, it is necessary to examine carefully each of these "errors."
The majority says that the trial judge erred in sustaining the State's objection to counsel's argument that the State had tailored the evidence by not calling Joseph Bachelor as a witness. However, it is well settled that when a witness is equally available to both parties, no inference should be *164 drawn or comments made on the failure of either party to call the witness. Haliburton v. State, 561 So.2d 248 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991); Martinez v. State, 478 So.2d 871 (Fla. 3d DCA 1985), review denied, 488 So.2d 830 (Fla. 1986). John Bachelor was equally available to both parties, and the fact that Amos chose to call him as a witness did not entitle his counsel to point out that the State had not called him. Therefore, this ruling was not error at all.
The majority also holds that the trial court should have permitted Amos, on redirect following the prosecutor's recross, to explain that many hours of his conversations with the police were not taped. The majority reasons that this would have been relevant to rebut the prosecution's recross-examination in which it was brought out that Amos was given the opportunity to add anything he wished to the taped statement. However, the State argues that its inquiry was made only to clarify the fact that Amos had previously testified that everything he had told the police was not recorded. Thus, the State says that defense counsel's question on redirect was improper because it was beyond the scope of recross as it did not qualify, explain, or limit any testimony that was elicited. This is a close call, and it is hard to see how the judge abused his discretion in sustaining the objection. However, it does not make any difference because Amos had clearly explained in his earlier testimony that much of his conversation with the police had not been taped.
Finally, it is necessary to analyze the effect of the judge's admonition that defense counsel could not speak to Amos during the one-hour lunch recess because Amos had already taken the stand and had not yet been cross-examined. In Bova v. State, 410 So.2d 1343 (Fla. 1982), this Court held that even though the defendant is on the witness stand, he cannot be prevented from talking to his counsel during a short recess. However, the Court concluded that the error in Bova's case was harmless.
Subsequently, in Perry v. Leeke, 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), the United States Supreme Court held that a defendant had no constitutional right to confer with his attorney during a fifteen-minute break in his testimony. The Court rested its decision on the principle that the truth-seeking function of the trial is better served when witnesses, including defendants, are not subject to coaching by attorneys in the middle of their testimony. The Court distinguished its earlier decision in Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), in which the Court had held that a defendant could not be precluded from talking with his counsel during an overnight recess despite the fact he was still on the stand. In Perry, the Court pointed out that the rationale of Geders was that the defendant must be permitted to talk to counsel about overall trial strategy and other matters related to the case, and that a refusal to permit an opportunity for this kind of discussion for so long a time was per se reversible error as a deprivation of the right to counsel.
Thus, the state of the law on the subject appears to be that where there is a long recess, any restriction on the defendant's right of access to his counsel violates the federal constitution without regard to a showing of prejudice. On the other hand, it is permissible and even appropriate to restrict a defendant's right to talk to counsel during a short recess. I believe that the one-hour luncheon recess in the instant case falls within the "short recess" principle of Perry rather than the "long recess" rule of Geders. This is confirmed by the fact that defense counsel told the judge that the reason he wanted to see Amos was to talk to him about his pending cross-examination rather than about the calling of witnesses or any other trial strategy. There was no error under federal law.
Of course, under Bova it is also impermissible to keep a testifying defendant away from counsel during a short recess, but its effect is evaluated on a harmless error basis. Even though the judge's admonition to Amos's counsel was error under Florida law, I have no difficulty in *165 concluding that it was harmless. The record clearly demonstrates that Amos is guilty. On the other hand, whether or not his conduct is deserving of the death penalty is subject to dispute. Thus, a finding of harmlessness would be difficult insofar as sentencing is concerned. I need not reach that decision, however, because I agree that the penalty phase of the trial must be redone because of the absence of a Faretta inquiry and the judge's refusal to give Amos more time to prepare for that aspect of the proceeding.
I would affirm the convictions, but I would reverse the death sentence and remand for a new penalty phase proceeding.
McDONALD, J., concurs.
NOTES
[1] Edward Caine, although traveling with Spencer and Amos to West Palm Beach, dropped the codefendants off near the Mr. Grocer and drove back to Belle Glade. Caine was never charged with any of the crimes committed by Spencer and Amos.
[2] We note that the cases cited by our colleague in dissent deal with situations where the witness in question was never called by either party. Furthermore, Martinez v. State, 478 So.2d 871 (Fla. 3d DCA 1985), review denied, 488 So.2d 830 (Fla. 1986), cited in the dissent, supports our position that, in certain situations, comment on a party's failure to call a witness is permissible. In this instance, the defense called the witness and presented evidence not presented by any of the witnesses called by the State.
[3] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).