698 So.2d 860 (1997)
Miguel BAUTA, Appellant,
v.
The STATE of Florida, Appellee.
No. 95-387.
District Court of Appeal of Florida, Third District.
April 23, 1997.
As Amended on Denial of Rehearing and Grant of Certification September 17, 1997.
*861 Bennett H. Brummer, Public Defender, and J. Rafael Rodriguez, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Douglas J. Glaid, Assistant Attorney General, for appellee.
Before JORGENSON, COPE and GERSTEN, JJ.
COPE, Judge.
Miguel Bauta appeals his convictions for capital sexual battery in violation of subsection 794.011(2), Florida Statutes (1991), and lewd, lascivious, or indecent assault in violation of section 800.04, Florida Statutes (1991). We affirm.
First, defendant argues that the trial court should have dismissed the jury panel and restarted jury selection with a new panel after an emotional outburst by a prospective juror.
The trial court conducted the initial segment of voir dire. Because this was a sexual battery case, the court asked whether any of the jurors had been the victim of sexual abuse, or had a relative, friend or acquaintance who had been such a victim. The court explained in substance that if the answer was yes, any follow-up questions would be asked privately with only the judge and attorneys present.
Juror L. misunderstood the court's instruction. When the court began questioning individual prospective jurors in open court, Ms. L. answered the court's questions about employment, marital status, and prior jury service. She then went on to state that she had been a victim of incest, sexual molestation, and rape, and that she would not be able to give the defendant a fair trial. She then broke down crying and was comforted by the juror sitting next to her, juror Popejoy. The court called a recess and excused juror L. from further jury service.
Defendant moved to discharge the jury panel, arguing that the entire panel had been tainted by juror L.'s emotional outburst. The court decided instead to conduct a voir dire examination of the remaining jury panel members. The court instructed the prospective jurors that Ms. L.'s personal experience was totally unconnected with this case, and that the defendant had no responsibility or connection with juror L.'s past experiences. The court then asked the prospective jurors in several ways whether their objectivity had been decreased by the episode with juror L. The only juror specifically responding was juror Popejoy. The court concluded that discharge of the entire jury panel was not necessary, and proceeded with jury selection.[1]
"The decision whether to dismiss any or all jurors lies in the sound discretion *862 of the trial judge." United States v. Jones, 696 F.2d 479, 492 (7th Cir.1982). "It is within the discretion of the trial court to determine whether remarks made by veniremen during the examination of the panel are prejudicial; and the trial court's decision not to quash the panel will not be disturbed absent an abuse of that discretion." State v. Davis, 806 S.W.2d 441, 443 (Mo.Ct.App.1991). We conclude that there was no abuse of discretion in the trial court's decision to conduct a voir dire of the jury panel on the issue of possible taint, and based on the response, to deny the defendant's motion to discharge the panel. See Stevens v. State, 251 So.2d 565, 567 (Fla. 1st DCA 1971); see also Watson v. State, 651 So.2d 1159, 1162-63 (Fla.1994), cert. denied,___U.S.___, 116 S.Ct. 151, 133 L.Ed.2d 96 (1995); Randolph v. State, 562 So.2d 331, 337 (Fla.1990). See generally 47 Am.Jur.2d Jury §§ 247-48, 251, 253 (1995).
Second, defendant contends that the trial court erred in denying defendant's peremptory challenge of a particular juror. Because this objection was not renewed at the conclusion of jury selection, it is not preserved for appellate review. See Mitchell v. State, 620 So.2d 1008, 1009 (Fla.1993); Joiner v. State, 618 So.2d 174, 176 (Fla.1993). Assuming the point had been properly preserved for appellate review, the state's Neil[2]-based objection was sufficient. Melbourne v. State, 679 So.2d 759, 764 & n. 2 (Fla.1996).
Third, defendant asserts that the trial court erred by admitting into evidence the child's statements to her mother and the Rape Treatment Center physician under the child hearsay exception.[3]See § 90.803(23), Fla. Stat. (1991). The trial court issued a lengthy written order in which the court excluded two other child hearsay statements. An examination of the written order reveals that the trial court applied the correct legal standards. We see no abuse of discretion in the court's rulings.
Fourth, defendant contends that the trial court erred by refusing to instruct the jury on the offense of lewd and lascivious assault as a lesser-included offense of sexual battery. In State v. Hightower, 509 So.2d 1078 (Fla.1987), the Florida Supreme Court held that the crime of sexual battery and the crime of lewd, lascivious, or indecent assault or act are mutually exclusive. Id. at 1079. Presumably for that reason, section 800.04 is not listed as a lesser included offense of the crime of sexual battery in the Schedule of Lesser Included Offenses in the Florida Standard Jury Instructions in Criminal Cases. There was no error in the court's refusal of the requested jury instruction. On this issue we certify direct conflict with Ready v. State, 636 So.2d 67, 68 (Fla.2d DCA 1994).
Fifth, defendant argues that the trial court erred by sustaining the state's objections to certain cross-examination questions defendant put to the lead detective who conducted the investigation in this case. Defendant attempted to ask the detective whether he had investigated the victim's 18-year-old brother. The defendant apparently desired to insinuate to the jury that the brother could be the source of the digital penetration which was testified to by the child victim, I.A., physical evidence of which was described by the Rape Treatment Center physician.
The charge against the defendant in this case came about because the victim, I.A., told her mother in substance that defendant, who was the next-door neighbor, had sexually abused her. The child repeated this information to the police and the Rape Treatment Center physician, and so testified at trial. The case boiled down to whether the jury believed the testimony of the victim, whose credibility was attacked by the defense. There was no evidence or factual basis suggesting any inappropriate, much less criminal, conduct by the victim's brother. There was no reasonable basis for the defendant to suggest that the police should have launched an investigation of the brother when the police had been called to investigate the child's charge that she had been sexually *863 abused by the defendant, who the child knew and specifically identified.
At trial defendant asked the lead detective whether he ran a records check on the brother; whether the brother was a subject of the investigation; and whether the detective knew anything about the brother. The State's objections were properly sustained. Under the circumstances, these questions were irrelevant and potentially seriously misleading for the jury. See § 90.403, Fla. Stat. (1991); State v. Johnson, 284 So.2d 198, 199-200 (Fla.1973).
Sixth, defendant claims that the trial court should have sustained his objections to certain questions which were asked of the mother regarding the examination of the child at the Rape Treatment Center. The defense argued that having the mother explain the physical examination procedure was calculated to garner sympathy for the child. The questioning on the examination procedure was brief and placed the events in a logical sequence for the jury. The mother testified after the child but before the Rape Treatment Center physician. We see no abuse of discretion in the court's decision to overrule the objections.
Seventh, defendant argues that the trial court erred by sustaining a state objection to a portion of the defendant's closing argument. As already stated, prior to trial the court excluded two statements which the state had sought to introduce under the child hearsay exception, subsection 90.803(23), Florida Statutes (1991). One of the excluded statements was a statement taken by the lead detective in the case. The court ruled that the lead detective's interview of the child had been conducted in a way which inadvertently had suggested some of the answers to the detective's questions. The court was also concerned that since the child herself would testify and two other child hearsay statements would be admitted into evidence (the statement to child's mother and the statement to the Rape Treatment Center physician), to allow the lead detective to repeat the child's out-of-court statement would be needlessly cumulative. See § 90.403, Fla. Stat. (1991); Pardo v. State, 596 So.2d 665, 667-68 (Fla.1992).
At trial, the state did not call the lead detective as a witness. The state presented as witnesses the victim, the victim's mother, the victim's sister, and the Rape Treatment Center physician.
Defendant's witnesses included the lead detective and the original investigating officer.
During closing argument, defense counsel said:
And by the way, it's interesting that this is a capital sexual battery case and the lead investigator in this case, Sergeant Gallagher, who has spent more time in this courtroom today than he has throughout the rest of the case was not even called by the State to give you, the jury, the benefit of knowing what he did in this case. Do you think that's because he had favorable evidence to present for the State?
The state's objection was sustained.
At a sidebar conference, the court explained that it had sustained the state's objection because the lead detective was equally accessible to both sides and that, under Haliburton v. State, 561 So.2d 248 (Fla.1990), "`[w]hen such witnesses are equally available to both parties, no inference should be drawn or comments made on the failure of either party to call the witness.'" Id. at 250 (citation omitted).
Defendant correctly points out that the Haliburton rule does not apply here. In Haliburton the uncalled witness, Danny Lee, was equally accessible to both sides and was not called by either side. The defendant wanted to argue that the state should have called Lee to the stand, but the state objection was sustained because Lee was equally accessible to both sides. 561 So.2d at 250.
By contrast, in the present case the defendant called the lead detective to the stand and wanted to argue that the state should have done so. The Florida Supreme Court has held that this can be a permissible argument. Amos v. State, 618 So.2d 157, 162-63 & n. 2 (Fla.1993). Under the reasoning of Amos, Haliburton applies only to "situations where the witness in question was *864 never called by either party." Amos, 618 So.2d at 163 n. 2.[4]
We think, however, that in the present case the trial court's ruling was correct, for a different reason. In this case, defendant successfully excluded from evidence the child hearsay statement which was made to the lead detective. Once that happened, it served no useful purpose to call the lead detective to the stand.
With that background, it becomes clear that defense counsel made a disingenuous argument when he told the jury:
And by the way, it's interesting that this is a capital sexual battery case and the lead investigator in this case ... who has spent more time in this courtroom today than he has throughout the rest of the case was not even called by the State to give you, the jury, the benefit of knowing what he did in this case. Do you think that's because he had favorable evidence to present for the State?
Of course, the detective did have relevant evidence to present to the jurythe child's hearsay statementwhich the defense had successfully prevented the jury from hearing. The defense argument was misleading, and for this reason, the objection was properly sustained. Alternatively, if the trial court's ruling could be viewed as error, the error was harmless.
Eighth, defendant contends that the prosecutor made an improper closing argument. There was no defense objection, but defendant now contends that the prosecutor's closing argument was sufficiently severe to constitute fundamental error.
Defendant's defense was that the child had made up the story about the defendant, either in order to gain attention for herself or because she had been coached or led by the state. Anticipating that this would be the defense position, the prosecutor argued in closing, in part:
Now, the other thing is, do you believe and you would have to believe that she was coached, that she was coached by the police, her mother, the State Attorney's Office and everyone to come in here and lie to you, that we put those words into her mouth, that we did it to persecute this man.
Use your common sense. Don't you think that as a prosecutor in Dade County I have better things to do than to persecute this defendant?
Everyone in this room knows what the crime rate in Dade County is.
Don't you think that as a prosecutor I have enough to do?
Taken in isolation, the statement "Don't you think that as a prosecutor in Dade County I have better things to do than to persecute this defendant?" was improper. That is so because the statement can be interpreted by the jury as an assertion by the prosecutor of her personal view of the guilt of the defendant. See Jones v. State, 571 So.2d 1374, 1375-76 (Fla. 1st DCA 1990). When read in context, however, the prosecutor was responding to the defense theme that the state, including the prosecutor personally, had coached or led the child victim into making statements about the defendant which were untrue. The prosecutor's argument was not objected to and was an isolated comment in a very lengthy closing argument. If objectionable at all in this context, the comment does not constitute fundamental error.
Defendant also claims fundamental error in the prosecutor's rebuttal argument. Defendant complains that it was improper argument for the prosecutor to say, "Now, there is a lot of things that we wish we could have, should have, would have done, and I don't want you to second guess as to why the detective didn't take the stand." This was a fair reply to the defendant's argument that the state should have called the lead detective to the witness stand. The lead detective had little utility to the state once the defendant had successfully excluded from evidence the child's statement to the lead detective. While the state's argument here is somewhat cryptic, the state could not be much more specific without telling the jury the underlying *865 facts regarding the exclusion of the child's hearsay statement. The state went on to explain that it had offered the direct testimony that it felt was necessary to prove the case, and that the best evidence was the testimony of the child. This was a fair response to the defendant's closing argument.
Finally, defendant claims error in another unobjected-to argument. Defendant maintains that the closing argument improperly alluded to facts which were not in evidence. That is not so.
The initial investigating officer, Officer Bechler, went to the child's home in response to the initial call to the police. The officer spoke little Spanish and the child, who had recently arrived in the United States, spoke little English. Consequently, the officer's initial interview was a three-way conversation wherein he spoke to the mother, the mother spoke to the child, and the child's answers were then restated in English for the officer. This was not a courtroom-style process of verbatim translation. The officer testified that he had been told by the mother, in response to the translated questions to the child, that there had been fondling but no penetration. However, the child's own testimony at trial was that there had been digital penetration. The physical examination results were consistent with the child's testimony.
The gist of the state's rebuttal argument[5] was that if the officer could have anticipated that this informal process of translation would later lead to a dispute about what was said, then the initial interview would have been handled differently. The prosecutor's rebuttal argument on this point is clearly referring to matters in evidence, and is not a reference to matters outside the record.
For the reasons stated the convictions are affirmed.
Affirmed; direct conflict certified.
NOTES
[1] Juror Popejoy was later excused.
[2] State v. Neil, 457 So.2d 481 (Fla.1984).
[3] The victim was seven or eight years old at the time of the charged crimes, and nine years old at the time of trial.
[4] Although the majority opinion did not cite Haliburton, the majority by general reference distinguished the cases relied on by the dissent, the first one of which was Haliburton. See Amos, 618 So.2d at 163 n. 2 (majority opinion); id. at 164 (dissenting opinion) (citing Haliburton).
[5] The complained-of argument was:

We do not know what the child told the mother. We don't know what the mother told Rommy at the time that Officer Bechler was there because Officer Bechler told you that he never, ever talked to the child. Maybe he should have, could have, would have if he had known this was going to be a problem, but at the time he was sensitive to the child who he was embarrassed to talk about intimate details.