WALLACE, Judge.
Clarence William Leerdam appeals his convictions of two counts of attempted first-degree murder, one count of armed burglary, and one count of violating a final injunction for protection. First, he contends that he was deprived of his right to confer with counsel during a trial recess. Applying Florida law in light of United States Supreme Court precedent, we find that the error was harmless. Second, Leerdam contends that the State elicited an impermissible comment on his post-Miranda[1] silence, but he does not demonstrate error. Accordingly, we affirm.
At approximately 2 a.m. on October 3, 2002, Leerdam entered the home of his former girlfriend, Doreen Delguidice, armed with a .38 caliber revolver. In the bedroom, he found Delguidice and her new boyfriend, Chris Bililis, and fired six shots, one of which pierced Bililis’ left hand. At trial, Leerdam testified in support of a defense theory that his intent was to commit suicide in Delguidice’s presence, not to murder her and whomever he may have found with her. At the conclusion of defense counsel’s direct examination of Leer-dam, the following exchange occurred:
THE COURT: Counsel approach a minute, please.
(Thereupon a sidebar conference was held outside the presence of the jury as follows:)
THE COURT: Thank [sic], are you going to be doing a cross?
[Prosecutor]: Yes, sir.
THE COURT: I take it it’s going to be — •
[Prosecutor]: Do you want to take a break? That’s fine, Judge.
THE COURT: I suggest we take a break now and then get done. Okay? Fine.
*1048 (Thereupon, a sidebar conference was concluded and proceedings resumed before the jury as follows:)
THE COURT: Be in recess for ten minutes.
(Thereupon a conference was held outside the presence of the jury as follows:)
[Defense counsel]: I would like the opportunity to confer with Mr. Leerdam during this break.
[Prosecutor]: Judge, I ask—
THE COURT: Let’s do this. He’s under oath. He’s in the middle of testimony and I don’t think I’m supposed to let you do that.
[Defense counsel]: Judge, I’m not sure that — well, I’m going to say it another way. I don’t believe that applies to the attorney and the defendant, his client. I think it applies to witnesses.
THE COURT: Right now he is a witness and I’m not going to let you talk with him. If I’m wrong, I’m wrong. Okay? But I’m not going to let you do it.
During the break, jury instructions and lesser offenses were discussed. The State’s cross-examination of Leerdam commenced at the conclusion of the break.
On appeal, Leerdam contends that he was deprived of his constitutional right to counsel, which is guaranteed by the Sixth Amendment to the United States Constitution — applicable to Florida through the Fourteenth Amendment — and by article I, section 16, of the Florida Constitution. He further contends that this deprivation warrants a new trial. To resolve these issues, we must consider federal and Florida precedent regarding a defendant’s right to consult with counsel during a recess, that is called while the defendant is on the witness stand. Federal and Florida authorities agree that a defendant does not have the constitutional right to discuss his trial testimony with counsel while that testimony is in progress. Beyond that agreement, federal and Florida authorities differ significantly.

Deprivation of the Right to Counsel Under the Federal and Florida Constitutions

According to the United States Supreme Court, the existence of a Sixth Amendment violation depends upon whether the character of the recess compels a finding that the defendant has been denied effective assistance of counsel. Perry v. Leeke, 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989) (construing Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976)). In Geders, the Supreme Court held that denying a defendant the opportunity to consult with counsel during a seventeen-hour overnight recess, which was called during the defendant’s testimony, deprived him of his Sixth Amendment right to counsel because it was appropriate to presume that the normal consultation between client and counsel during an overnight recess would include matters other than the content of the defendant’s testimony. 425 U.S. at 88-91, 96 S.Ct. 1330. Such consultation would normally encompass “a variety of trial-related matters” such as “the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain.” Perry, 488 U.S. at 284, 109 S.Ct. 594 (construing Geders). A deprivation of access to counsel during a recess of that character was per se constitutional error, denying the defendant effective assistance of counsel and entitling him to a new trial without the need for him to show that he was prejudiced by the error. Id. at 279-80, 109 S.Ct. 594 (noting that Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), cited Geders to make clear that the actual or constructive denial of effective assistance of counsel did not require an additional showing of prejudice).
In Perry, the Supreme Court contrasted Geders with the facts of the case before it *1049 and found that a fifteen-minute recess during the defendant’s testimony was “of a different character” than the overnight recess in Geders. 488 U.S. at 284, 109 S.Ct. 594. The Supreme Court announced a different rule: “[I]n a short recess in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice.” Id. at 284, 109 S.Ct. 594. In such a case, the defendant would not be relieved of the burden to demonstrate prejudice as in Geders. In sum, under federal authority, the denial of access to counsel during a recess of the character in Geders, without more, is a per se deprivation of the Sixth Amendment right to effective assistance of counsel, but the denial of access to counsel during a recess of the character in Perry, without more, is not a constitutional deprivation at all.
Meanwhile, the Florida Supreme Court has adhered to its own formulation of the defendant’s right to consult with counsel during a recess that is called during the defendant’s testimony: “[N]o matter how brief the recess, a defendant in a criminal process must have access to his attorney.” Amos v. State, 618 So.2d 157, 161 (Fla.1993) (quoting Bova v. State, 410 So.2d 1343, 1344-45 (Fla.1982), which referred to the defendant’s right to counsel as provided by article I, section 16, of the Florida Constitution). Such access allows defense counsel to advise, calm, and reassure the defendant without violating the rule against coaching witnesses. Id. (citing Thompson v. State, 507 So.2d 1074, 1075 (Fla.1987)). Thus in Florida, regardless of whether the recess is one hour,[2] thirty minutes,[3] or ten minutes,[4] “to deny a defendant consultation with his attorney during any trial recess, even in the middle of his testimony, violates the defendant’s basic right to counsel.” Id. at 161 (quoting Bova, 410 So.2d at 1345). However, all such violations are subject to harmless error analysis, wherein the State is afforded the opportunity to prove that the constitutional deprivation did not contribute to the verdict. See id.; Thompson, 507 So.2d at 1075; Bova, 410 So.2d at 1345; Cabreriza v. State, 517 So.2d 51, 52 (Fla. 3d DCA 1987).
In Amos, our supreme court did not cite any federal authority in its discussion of the constitutional • right to counsel, even though the dissent argued that the denial of access to counsel during the one-hour recess was not a constitutional deprivation under Perry. 618 So.2d at 164 (Grimes, J., concurring in part, dissenting in part). Thus we believe the Amos court construed the right to counsel as provided by article I, section 16, of the Florida Constitution, thus establishing Florida law regarding a criminal defendant’s right to counsel independent of the Sixth Amendment. See Michigan v. Long, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).
The State urges this court to find, pursuant to Perry, that Leerdam was not deprived of his constitutional right to counsel. However, Florida law affords greater protection of a defendant’s right to counsel than federal authority requires. See Traylor v. State, 596 So.2d 957, 961 (Fla.1992) (explaining that states, when construing their own state constitutions, may. place more rigorous restraints on government intrusions than the federal Constitution imposes). To prove a violation of the Sixth Amendment under federal authority, the defendant must show that he was denied *1050 effective assistance of counsel according to the character of the recess in which consultation was denied. Under Florida law, a violation of the right to counsel is proved when the defendant shows that he was denied access to counsel during any recess, without regard to the character of the recess or to proof of a denial of effective assistance of counsel. ' For this reason, we conclude that the trial court erred by denying Leerdam' access to his counsel after his counsel requested the opportunity to consult with him during the recess in this case. See Amos, 618 So.2d at 161; cf. Wallace v. State, 851 So.2d 216, 221 (Fla. 3d DCA) (finding no deprivation of the right to counsel when the record failed to suggest that the defendant, or counsel on the defendant’s behalf, wished to exercise that'right during a mid-testimony recess in which consultation was prohibited), review denied, 860 So.2d 980 (Fla.2003), cert. denied, 540 U.S. 1187, 124 S.Ct. 1431, 158 L.Ed.2d 95 (2004).

Harmless Error

Having' shown a constitutional deprivation, Leerdam contends that we may not proceed to the next step in the. analysis under Florida law, which is to consider whether was the error was harmless. Instead, Leerdam asserts that Geders as construed- by Perry compels reversal as per se error because a “trial-related matter,” namely jury instructions, could have been the subject of the consultation that was denied during the recess in which jury instructions were, in fact, ' discussed. Leerdam'correctly observes' that Florida law may not deny anyone the minimum Sixth Amendment protections provided by the Court in Geders as construed by Perry. See Traylor, 596 So.2d at 961 (explaining that states may not place more restrictions on the fundamental rights of their citizens than the federal Constitution permits, even when construing their own state constitutions).
However, the application of Florida law could never lead to a result at variance with Geders as construed by Perry. In one respect, Geders was a case in which the defendant proved from the record on its face a denial of effective assistance of counsel. In harmless error analysis under Florida law, the burden is on the State to prove beyond a reasonable doubt that the error did not contribute to the verdict. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). In any direct appeal in which the defendant is able to prove from the record on its face that the denial of effective assistance of counsel undermined confidence in .the outcome of the trial, the State cannot possibly prove beyond a reasonable doubt that the error did not contribute to the verdict.
In this case, Leerdam fails to prove from the face of the record that he was denied effective assistance of counsel for two reasons. First, the recess in this case was of a different character than the overnight recess in Geders, in which it was appropriate to presume that the defendant and his counsel would discuss a variety of trial-related matters. The character of the far shorter recess in this case does not compel the conclusion that Leerdam was denied effective assistance of counsel without further examination of the record.
Second, further examination of the record does not demonstrate that Leerdam was denied effective assistance of counsel. From the record, it is appropriate to presume that one trial-related matter — jury instructions — eoiild have been the subject of the consultation.[5] However, the record *1051 indicates that Leerdam’s trial counsel competently advocated for Leerdam during the recess. On appeal, no error with regard to jury instructions has been asserted or shown. If Leerdam had demonstrated error with regard to jury instructions, then it would be difficult for the State to prove that the error was harmless, given the related error of denial of access to counsel. Similarly, if it were appropriate to presume that the subject of the consultation could have been plea negotiations, then it would be difficult for the State to prove that the error did not affect the very jury verdict that such consultation could have precluded. Under the facts of this case, however, the State is not prevented from proving harmless error by a denial of effective assistance of counsel.
The error of denying access to counsel during a recess called immediately prior to cross-examination of the defendant has been found not to be harmless when the defendant’s performance on cross-examination could have affected the verdict. Thompson, 507 So.2d at 1075. In Thompson, the State called a recess for the sole purpose of aiding its effort to impeach the defendant, whose credibility, or lack thereof, was crucial to the issue of guilt. At that critical juncture, it was appropriate to presume that “defense counsel could have advised, calmed, and reassured [the defendant] without violating the ethical rule against coaching witnesses.” Id.
In this case, Leerdam’s performance on cross-examination could not have affected the verdict because the outcome did not hinge upon his credibility. While admitting other elements of attempted murder, Leerdam attempted to negate premeditation by testifying that he went to his former girlfriend’s home with the intention of committing suicide in her presence because he, as a seventy-year-old man who had been depressed, was despondent over the breakup of his romantic relationship with her. However, this theory, even if believed, was not inconsistent with conclusive evidence of premeditation.
The victims, Delguidice and Bililis, gave consistent descriptions of events. Several seconds of shouting transpired in the darkened bedroom before Leerdam opened fire. The first bullet hit Bililis as he attempted to obstruct the intruder. Leer-dam then fired twice, holding the gun level and aiming at the victims as they ran for the bathroom. Leerdam shouted, “Doreen, you are a whore.” After the victims reached the bathroom, Leerdam continued to fire through the bathroom door as Bililis locked it. Leerdam fired three shots through the bathroom door, one of which struck near the sound of Delguidice’s voice after she moved her position from where Leerdam had last seen her. Crime scene photographs and other forensic evidence supported the victims’ descriptions of events.
Hours before the shooting, Leerdam told a taxicab driver that he was angry at his girlfriend and wanted to use a gun to kill her. Hours after the shooting, while in police custody, he voluntarily told an officer, “Six shots and I missed her. I can’t believe I didn’t kill her,” among other in-culpatory statements while in custody.
Testifying on his own behalf on direct examination, Leerdam said that he let himself into the house with a key with the intention of climbing into Delguidice’s bed and shooting himself next to her. However, he did not remember many of the events described by the victims after he entered the bedroom, although he denied aiming the gun as it “went off.” On cross- *1052 examination, he maintained that the first shot was fired in self-defense, but he reasserted his lack of memory as to other events. He said that he did not remember making inculpatory statements before, during, or after the shooting. Thus Leer-dam’s testimony, even if believed, did not dispute key evidence of a premeditated design to kill.
As the trial judge instructed:
A premeditated design[] to kill means that there was a conscious decision to kill. The decision must be present in the mind of the Defendant at the tipie the act was committed. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the act itself. The period of time must be long enough to allow reflection by the Defendant. The premeditated intent to kill must be formed before the act was committed.
See also Fla. Std. Jury Instr. (Crim.) 6.2. Having carefully reviewed the entire record, we conclude that the error was harmless beyond a reasonable doubt.

Post-Miranda Silence

At trial, a police officer testified to voluntary statements Leerdam made about the shooting after his arrest and after his receipt of the warnings prescribed by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Over defense counsel’s objection, the officer was asked if Leerdam made any voluntary statements indicating that he wanted to kill himself. The officer answered no. Leerdam contends that the State elicited a comment on his post -Miranda silence in order to impeach his defense theory that his intent was suicide.
The State may not use for impeachment purposes a defendant’s silence after he has been arrested and has received Miranda warnings. Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); State v. Hoggins, 718 So.2d 761, 769 (Fla.1998) (holding that in addition to postarrest, post -Miranda silence, the Florida Constitution prohibits the use of post-arrest, pr e-Miranda silence as well). However, Leerdam effectively waived his right to remain silent when he freely and voluntarily conversed with the officer. See Ragland v. State, 358 So.2d 100, 100 (Fla. 3d DCA 1978). Therefore, any comment on Leerdam’s silence on a specific matter did not violate his constitutional right “when said constitutional right was not invoked.” Id.; see Downs v. Moore, 801 So.2d 906, 911 (Fla.2001); Valle v. State, 474 So.2d 796, 801 (Fla.1985) (applying Ragland), vacated on other grounds, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986), receded from on other grounds by State v. Owen, 696 So.2d 715, 719 (Fla.1997), and State v. Alen, 616 So.2d 452, 455 (Fla.1993).
Affirmed.
NORTHCUTT and VILLANTI, JJ., Concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

.Amos, 618 So.2d at 164 (Grimes, J., concurring in part, dissenting in part, identifying the duration of the recess the majority termed a "lunch recess” at 160).

. Thompson, 507 So.2d at 1075.

. Bova, 410 So.2d at 1344.

. We use the phráse "appropriate to presume” intentionally. It would be inappropriate on direct appeal to inquire into the actual content of extra-record communications made in the confidence of the lawyer-client relationship. If facts of the denial of effective assistance of counsel are lenown to the defen *1051 dant but are not apparent from the record, the defendant may choose to seek relief in postconviction proceedings pursuant to Florida Rule of Criminal Procedure 3.850, in which he may choose lo reveal confidential communication in order to prove his claim.