901 So.2d 227 (2005)
Manuel LENA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D03-108.
District Court of Appeal of Florida, Third District.
April 13, 2005.
*229 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.
Before COPE, FLETCHER and RAMIREZ, JJ.

On Motion for Rehearing
COPE, J.
On consideration of the appellant's motion for rehearing, we withdraw our previous opinion and substitute the following opinion:
Manuel Lena appeals his convictions for sexual battery on a minor and lewd and lascivious molestation of a child under twelve. We affirm.

I.

A.
Defendant-appellant Lena argues that the trial court erred by partially closing the courtroom during the testimony of the minor victim, who was eleven at the time of trial.
Section 918.16, Florida Statutes provides for a partial closure of the courtroom "when any person under the age of 16 or any person with mental retardation ... is testifying concerning any sex offense...." Id. § 918.16(1). The statute also provides for partial closure "upon the request of the victim, regardless of the victim's age or mental capacity...." Id. § 918.16(2).
Where there is a partial closure, the statute allows certain persons to remain in the courtroom. These are the "parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, court reporters, and, at the request of the victim, victim or witness advocates designated by the state attorney's office." Id. § 918.16(1); see also id. § 918.16(2). Everyone else must leave the courtroom during the testimony of the protected person (the victim, or the minor or mentally retarded witness).[1]
The statute does not require the court to set up a television link for remote viewing of the testimony. In the usual case the excluded persons must wait outside the courtroom during the testimony of the protected person and have no practical alternative means for observing or hearing the testimony.

B.
The State moved for partial closure of the courtroom under section 918.16, arguing that partial closure would reduce the trauma and intimidation to the minor victim. The State requested that the trial judge view the videotaped deposition of the victim, and the court did so.
The defense opposed the State's request, arguing that before section 918.16 could be applied, the court must determine that the constitutional standards for courtroom closure had been satisfied. See Alonso v. State, 821 So.2d 423, 426 (Fla. 3d DCA *230 2002) (citing Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)).
The trial court granted the State's motion. However, the court on its own initiative ordered that a television monitor be set up outside the courtroom. Those who were required to leave the courtroom during the minor victim's testimony were able to see and hear it contemporaneously by the television link. The defendant contends that this arrangement violated his right to have a public trial.

C.
The threshold question is what legal test applies for a partial courtroom closure where (as here) the persons excluded from the courtroom may see and hear the proceedings contemporaneously by television link.
The defense argues that the four-part Waller test is applicable to the present case. That is the test which the trial court utilized. The State argues that a lower standard, the "substantial reason" test, is applicable. See Douglas v. Wainwright, 739 F.2d at 533. We agree with the State's position.
The four-part Waller test was developed in the context of a case in which there had been a total closure of the courtroom during a lengthy suppression hearing in a criminal case. Waller, 467 U.S. at 42, 104 S.Ct. 2210. In that case, spectators and the press were excluded from the courtroom and had no means to see or hear the proceedings. There was no television link.
Similarly, in an ordinary partial closure under the Florida Statute, the excluded persons must leave the courtroom during the victim's testimony and have no alternative means to see or hear it. Section 918.16 does not require a television link for remote viewing.
In that situationwhere the excluded persons have no alternative means to see or hear the testimony contemporaneouslythis court has taken the position that the four-part Waller test must be satisfied. This test has been summarized as follows:
"Both the Sixth Amendment to the United States Constitution and article I, section 16 of the Florida Constitution provide the accused with the right to a public trial. While we recognize that the right of access in a criminal trial is not absolute, the circumstances allowing closure are limited. See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). In order to justify any type of closure, whether the closure is total or partial, the court must find "that a denial of such right is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest." 457 U.S. at 607, 102 S.Ct. at 2620.
The appropriate analysis to follow to determine whether a particular case warrants closure is set forth in Waller [v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)]. There are four prerequisites that must be satisfied before the presumption of openness may be overcome. First, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; second, the closure must be no broader than necessary to protect that interest; third, the trial court must consider reasonable alternatives to closing the proceedings; and fourth, the court must make findings adequate to support the closure. Waller, 467 U.S. at 47, 104 S.Ct. at 2215."
Alonso v. State, 821 So.2d at 426 (quoting Pritchett v. State, 566 So.2d 6, 7 (Fla. 2d *231 DCA 1990) (other citations omitted)).[2]
The present case stands on a completely different footing. In the present case the excluded persons were able to see and hear the victim's testimony contemporaneously by a television link. As one court has aptly put it, "the courtroom was not closed but rather extended beyond the confines of the physical room. Neither appellant's right to an open and public trial, nor his right to confrontation, was compromised by the steps the trial court took." State v. Rohde, 1993 WL 385363 (Ohio Ct.App.1993).
It is unsound to apply the stringent Waller test in the circumstances now before us. The Waller test sets a very high standard for courtroom closure because the Waller test applies to cases in which the persons excluded from the courtroom have no alternative means to view the testimony. Since a viable alternative was provided herethe television linkwe agree with the State that the Waller test does not apply.
The State argues that under the circumstances present here, the State need show "only a `substantial' rather than `compelling' reason for the closure...." Douglas, 739 F.2d at 533. We agree. Where there is to be a partial closure of the courtroom under the statute, with a television link available for excluded persons, the trial court need only make an appropriate finding or findings setting forth the substantial reason why the partial closure is necessary.

D.
The legal standard was readily met in this case. The victim was eleven at the time of the trial. Approximately twelve to fifteen persons remained in the courtroom during her testimony, including the judge, six member jury, two alternates, defendant and defense counsel, the defendant's immediate family, the prosecutor, and several court personnel.[3] Twenty-five friends and family of the defendant were required to leave the courtroom, but were able to watch by television link while the victim testified.
The trial court ruled that the eleven-year-old victim would find the proceedings less traumatic, and speak more freely, in front of a small audience rather than a large one. The trial court's findings on this point are more than sufficient. The trial court correctly rejected the defendant's trial court argument that expert testimony would be needed from a physician or psychologist before the courtroom could be partially closed.
In the proceedings below, the defense made an alternative request that three relatives of the defendant be allowed to remain in the courtroom, in addition to the defendant's immediate family. The trial court rejected that request and, again, we find no error. The court followed the terms of the statute and the excluded persons were able to view the proceedings over the television link.[4]

II.
The defense next argues that the trial court erred by sustaining a State *232 objection to a portion of the defense closing argument. We agree that there was error, but conclude that the error was harmless.
At trial, the State presented its case through the child victim, several family members of the victim, and other witnesses. The State did not, however, call as a witness an investigator from the Department of Children and Families ("the DCF investigator") who had interviewed the victim one week after the criminal incident.
During the defense case, the defense called the DCF investigator as a witness.[5] The DCF investigator testified that the victim told him there had been penetration, whereas at trial the victim testified that there had been union, but no penetration. The physical examination at the rape treatment center was consistent with the latter version of events. The DCF investigator also testified regarding the terminology that the victim used for her body parts, which was different from the terminology the child used while testifying. In closing argument, the defense pointed to these inconsistencies to support a claim that the victim was fabricating the entire matter.
During the charge conference the day before closing argument, defense counsel advised the court he intended to argue that the State was tailoring the evidence because the State did not call the DCF investigator as a witness, thus requiring the defense to do so to present a complete picture of the facts. The court agreed that this was a permissible argument under Amos v. State, 618 So.2d 157, 162-63 (Fla.1993), and Bauta v. State, 698 So.2d 860, 863-64 (Fla. 3d DCA 1997).
During the defense closing argument, the following transpired:
[DEFENSE COUNSEL]: What is particularly troubling about the State's presentation is the way that they tailored the evidence.
Again, that is their job right there. The sign over the Judge's head, and by forcing me to call Victor [the DCF investigator].
[PROSECUTOR]: Objection.
[DEFENSE COUNSEL]: They have tailored the evidence.
THE COURT: Overruled.
[DEFENSE COUNSEL]: They have tailored the evidence. Whatever kind of explanation they want to give you, they didn't put it out there for you to see.
They didn't put all of the evidence in front of the jury and they forced me to call a state employee, the first one objective person to ever speak to the girl I had to call.
Why didn't they call him?
[PROSECUTOR]: Objection.
THE COURT: Sustained.
[DEFENSE COUNSEL]: And you can consider the fact that the State has tailored the evidence when you go back and decide what happenedwhat happened in this case.
TR. 859-60 (emphasis added).
The defense argues that the trial court should not have sustained the State objection to the statement, "Why didn't they call him?" We agree. See Bauta v. State, 698 So.2d at 863-64. The argument was proper under Amos.
By way of background, the Haliburton rule provides that when a witness is not called by either side, and the witness is equally available to both parties, then *233 one side cannot comment on the other side's failure to call that witness. See Haliburton v. State, 561 So.2d 248, 250 (Fla.1990).
The Amos rule, by contrast, applies where the defense calls a witness to testify at trial, and the State failed to call that witness in its case in chief. 618 So.2d at 162-63. In that situation the defense is allowed to argue that the State was attempting to tailor the evidence by failing to call that witness in its case in chief. Id. The State is then allowed to argue in rebuttal the reasons why it did not call that witness in its case in chief.[6]
While the trial court erred by sustaining the objection to the question, "Why didn't they call him?", the error was harmless beyond a reasonable doubt. In the quoted passage in the transcript defense counsel repeatedly argued that the State had tailored the evidence. Elsewhere the defense argued about the substantive differences between the testimony of the DCF investigator and the other witnesses in the case. TR. 846-51. The isolated error in sustaining the objection was harmless.

III.
The defense argues that the State should not have been allowed to qualify the state attorney's forensic interviewer as an expert in forensic interviewing. We agree but conclude that the error was harmless.
A forensic interviewer of the State Attorney's Office, Adria Silverman, conducted a videotaped interview with the victim. The videotaped interview was played for the jury at trial.
In laying the foundation for the introduction of the videotape, the prosecutor questioned Ms. Silverman about her credentials, job duties, and the procedure that she followed in conducting the videotaped interview. Over objection, she was presented to the jury as an expert in the field of forensic interviewing.
We conclude that the defense objection should have been sustained. The record does not demonstrate the existence of a recognized field of expertise in forensic interviewing, such that a person can be qualified as an expert in it. It was, of course, perfectly permissible to present Ms. Silverman's educational background and work experience, but she should not have been presented to the jury as an expert in forensic interviewing.
Any error, however, was harmless. The entirety of Ms. Silverman's interview of the victim was videotaped. There was no unrecorded preliminary interview with the child. Ms. Silverman never expressed an opinion as to the credibility of the victim. The jury saw the entirety of the videotaped interview and could draw its own conclusions. The jury also saw the victim testify in person in court. Thus the identification of Ms. Silverman as an expert was entirely harmless.
Affirmed.
NOTES
[1] Under the case law, a total closure of the courtroom is one in which only the actual trial participants remain: judge, jury, essential personnel, parties, lawyers, and the witness who is testifying. See Douglas v. Wainwright, 739 F.2d 531, 532 (11th Cir.1984).

A partial closure is one in which some spectators are allowed, in addition to the trial participants. See Judd v. Haley, 250 F.3d 1308, 1315 (11th Cir.2001).
Section 918.16 is a partial closure statute because it allows additional spectators to remain: newspaper reporters, broadcasters, the parties' immediate families or guardians, and victim or witness advocates.
[2] The First and Fifth Districts have taken the position that a lower standard applies for a partial closure without a television link. See Hobbs v. State, 820 So.2d 347, 349 (Fla. 1st DCA 2002); Clements v. State, 742 So.2d 338, 341 (Fla. 5th DCA 1999). That difference of opinion need not be explored here, since the trial in this case included a television link.
[3] There is no indication that the press or broadcast media attended the trial.
[4] The trial court assumed that the constitutional Waller test was applicable and made the required findings supporting the partial closure. In view of our conclusion that the "substantial reason" test applies here, we need not review the Waller findings.
[5] The other defense witnesses included the defendant, the defendant's wife, and three friends of the defendant who testified about his reputation for truthfulness.
[6] The State made such arguments in rebuttal in this case. TR. 877-79.