561 So.2d 248 (1990)
Jerry HALIBURTON, Appellant,
v.
STATE of Florida, Appellee.
No. 72277.
Supreme Court of Florida.
April 5, 1990.
Rehearing Denied June 18, 1990.
*249 Charles W. Musgrove, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Jerry Haliburton appeals his first-degree murder conviction and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and sentence.
In the early morning of August 9, 1981, appellant burglarized the home of Donald Bohannon and attacked Bohannon with a knife as he slept. Bohannon died as a result of thirty-one stab wounds over his neck, chest, arms, and scrotum. After the murder appellant told his brother, Freddy, that he had killed Bohannon just to see if he could kill another human being. Finding Haliburton guilty of first-degree murder, the jury recommended the death penalty by a nine-to-three vote. The trial judge found four aggravating factors[1] and no statutory mitigating factors. The court considered the nonstatutory mitigating circumstances placed into evidence, found them insufficient to outweigh the aggravating *250 circumstances, and imposed the death sentence.
Appellant asserts that the trial court erred in refusing to require the jury to return a special verdict identifying whether it found premeditated murder or felony murder. He argues that in failing to require this special verdict, he may have been denied his constitutional right to a unanimous jury verdict. We find this argument without merit. This Court has previously held that a special verdict to determine whether a defendant's first-degree murder conviction is based upon premeditated or felony murder is not required. Buford v. State, 492 So.2d 355, 358 (Fla. 1986). Furthermore, in Brown v. State, 473 So.2d 1260, 1265 (Fla.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985), we noted that neither constitutional principles nor rules of law or procedure require special verdicts.
Appellant argues that the trial court erred in refusing to allow the defense, during closing argument, to comment upon Lee  an uncalled witness. Initially we observe that the defense in fact succeeded in commenting upon the absence of Lee's testimony.[2] The purpose of closing argument is to help the jury understand the issues by applying the evidence to the law. Hill v. State, 515 So.2d 176, 178 (Fla. 1987), cert. denied, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988). Thus, the purpose of closing argument is disserved when comment upon irrelevant matters is permitted. In State v. Michaels, 454 So.2d 560, 562 (Fla. 1984), we said that
[w]hen such witnesses are equally available to both parties, no inference should be drawn or comments made on the failure of either party to call the witness.
We agree with the district court in Martinez v. State, 478 So.2d 871, 871 (Fla. 3d DCA 1985), review denied, 488 So.2d 830 (Fla. 1986), that
an inference adverse to a party based on the party's failure to call a witness is permissible when it is shown that the witness is peculiarly within the party's power to produce and the testimony of the witness would elucidate the transaction.
(Emphasis added.) In the instant case, the witness was equally available to both parties. We hold that the trial judge did not err in limiting further comment.
The third issue raised is whether the trial court erred in rereading portions of requested testimony[3] without including the testimony of officer Wilburn, the crime-scene expert. The rereading of testimony is within the discretion of the trial judge. Kelley v. State, 486 So.2d 578, 583 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). We find no abuse of discretion where the trial judge rereads the testimony specifically requested by the jury and that testimony, as in this instance, is not misleading.
Appellant maintains that three photographs entered into evidence should not have been admitted. We disagree. The basic test of a photograph's admissibility is relevance. Straight v. State, 397 So.2d 903, 906 (Fla. 1981), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). Appellant's reliance upon Young v. State, 234 So.2d 341 (Fla. 1970), receded from on other grounds, State v. Retherford, 270 So.2d 363 (Fla. 1972), cert. denied, 412 U.S. 953, 93 S.Ct. 3020, 37 L.Ed.2d 1007 (1973), for the proposition that the trial judge abused his discretion in admitting the challenged photographs is misplaced. Young involved the admission of forty-five *251 highly prejudicial photographs of marginal relevance. The photographs submitted in this instance were used to identify the victim and were used by the medical examiner to illustrate the nature of the victim's wounds. Any prejudice is outweighed by the probative worth of the photographs and the trial judge did not err in admitting them into evidence.
The fifth issue raised is whether the trial court erred in refusing to declare a mistrial due to the admission of cumulative, irrelevant, and prejudicial evidence. Specifically, appellant objects to the fact that his brother, Freddy, was permitted to testify regarding incriminating statements made by appellant.[4] Because these comments were relevant to the knifing at issue, they were admissible. Appellant also objects to Freddy's reference to an appeal.[5] We find this single inadvertent reference to the appeal, which in no way disclosed the outcome of the prior trial, harmless error as was the comment, "Well, there's a couple more people that I want to get." We are convinced beyond a reasonable doubt that neither comment affected the outcome of the trial. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Appellant also argues that the testimony of Sharon Williams should have been excluded in its entirety. We do not agree. Sharon testified that appellant said to her, while holding a knife at her throat: "You don't think I'd do nothing to you. I do you just like I did that man, I kill you... ." Sharon further testified that Haliburton told her during this same conversation that a knife was "the best thing next to a gun" because a killing with a knife would be hard to prove. We agree with the trial judge that this testimony was admissible as relevant to the issue of whether the appellant was in fact confessing to the instant murder.[6] Appellant also objects to Sharon's testimony that Haliburton had raped her. This testimony was irrelevant to the crime for which appellant was standing trial and its admission into evidence was error. We find the error harmless however in light of the fact that the jurors were instructed to disregard any statements from Williams concerning bad acts of the appellant alleged to have been directed toward her, and polled regarding their ability to follow the instruction. In light of the curative instruction coupled with the compelling nature of the state's case, we find no reasonable possibility that the error contributed to the conviction. DiGuilio.
Appellant's sixth point on appeal is that the trial court committed error in refusing to declare a mistrial due to alleged attempts by the prosecutor to shift the burden of proof. The record discloses that the trial judge properly instructed the jury on the burden of proof and we find this argument without merit.
The argument that Florida's capital sentencing statute is unconstitutional is without merit. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
*252 We disagree with appellant's contention that the court erred in allowing the jury to consider whether this homicide was heinous, atrocious, or cruel and in allowing the state to display a color photograph to the jury. There was evidence that the victim was sleeping or drunk in his home in his bed when attacked without provocation and vainly attempted to defend himself. This evidence was sufficient to present a jury question on the issue of heinous, atrocious, or cruel. Cf. Hansborough v. State, 509 So.2d 1081, 1086 (Fla. 1987) (evidence of defensive wounds and that victim did not die instantly supported finding that murder was heinous, atrocious, or cruel).
Appellant's ninth point asserts that two of the four aggravating factors were improperly found. Specifically, he argues that at the time of his crime he was not under sentence of imprisonment as intended in section 921.141(5)(a), Florida Statutes (1987). We disagree. We have held that a finding that an appellant was under sentence of imprisonment and thus subject to the aggravating factor provided by section 921.141(5)(a) is supported by evidence that he was on parole at the time he committed murder. Delap v. State, 440 So.2d 1242 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984); Jones v. State, 411 So.2d 165 (Fla.), cert. denied, 459 U.S. 891, 103 S.Ct. 189, 74 L.Ed.2d 153 (1982); Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). The appellant was placed on mandatory conditional release (MCR) pursuant to section 944.291, Florida Statutes (1979), on January 2, 1981, and this was his status at the time of the murder. When the appellant was placed on MCR, the statute read as follows:
A prisoner who has served his term or terms, less allowable statutory gain-time deductions and extra-good time allowances, as provided by law, shall, upon release, be under the supervision and control of the department and shall be subject to all statutes relating to parole, but in no event shall such supervision extend beyond 2 years, as determined by the Parole and Probation Commission.
§ 944.291(1), Fla. Stat. (emphasis added). We approve the reasoning in Williams v. State, 370 So.2d 1164 (Fla. 4th DCA 1979), in which the court stated that one released on MCR is serving a sentence, a portion of which is in prison, and the remainder in freedom subject to supervision as if on parole.
We disagree that this murder was not cold, calculated, and premeditated. Appellant broke into the victim's home and attacked him while he slept. He confessed to his brother that he killed Bohannon just to see if he could kill. These facts support the heightened premeditation and calculation required for a finding that the murder was cold, calculated, and premeditated. Mason v. State, 438 So.2d 374 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).
Accordingly, we affirm the conviction and sentence.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW and GRIMES, JJ., concur.
BARKETT and KOGAN, JJ., concur specially with opinion.
BARKETT, Justice, concurring specially.
I concede that this Court has previously held that a special verdict delineating whether a first-degree murder conviction is based on felony murder or premeditated murder is not required. However, I believe it would be a much better practice. Moreover, I cannot see any logical reason not to require one. Surely a trial judge would benefit from such a verdict when considering the jury's recommendation and deciding whether to impose the death penalty. Likewise, death penalty review would be easier and more complete with the information contained in such a special verdict. I would require such a special verdict in all future cases.
*253 KOGAN, Justice, concurring specially.
I believe that it was error not to permit the defendant to fully comment during his closing argument on the failure of the state to produce the witness Danny Lee. However, under the facts of this case it would be, in my opinion, harmless error.
NOTES
[1] The capital felony was committed by a person under sentence of imprisonment; the defendant was twice previously convicted of violent felonies; the capital felony was committed while engaged in a burglary; and the capital felony was a homicide and was committed in a cold, calculated, and premeditated manner, without any pretense of moral or legal justification. § 921.141(5)(a), (b), (d), (i), Fla. Stat. (1987).
[2] In his closing argument, defense counsel said:

The Judge in his instructions will tell you you can find that there is reasonable doubt in a case requiring a not guilty verdict because of the evidence, something that you heard in the evidence, because of a lack of evidence, something that somebody did not address in their testimony, or because of a absence of evidence. Danny Lee, I mean if you're going to evaluate this case, eliminate all reasonable doubt and all other possibilities, it seems you would have to have the testimony of Danny Lee.
[3] During deliberations, the jury delivered the following written request for rereading: "Those portions of testimony that deal with the time of the replacement of the jalousies  i.e., Cindy Miller, Mike Bohannon, Roger Miller."
[4] These statements were: "Well, if you ever want to kill someone, to kill them with a knife because a knife is more harder to trace than a gun"; in response to Freddy's question "[W]hy did you kill him," "He [appellant] said to see if he had the nerve to kill someone this way, meaning with a knife"; and during an argument in a bar, "That nigger must don't know who I am, I'll kill him just like I killed that cracker."
[5] During cross-examination, in response to a broadly-framed question, Freddy Haliburton testified: "I told Helen  I just  she was telling me about the case, about the appeal and everything. This is what brought my decision about asking her if there's anything I could do  [.]"
[6] In ruling on admissibility, the trial judge had the benefit of the following proffer:

Question [by State]: Sharon, had you at any time other than this night heard Jerry Haliburton make any statements about this murder?
A: "One time we was walking to school, [appellant] and I ... he was saying that he was on a murder rap... . As we were walking to school he said they got him on a murder rap but they can't prove it, but he actually did it."
She had testified earlier in the same proffer:
Q: Did you know what man he was talking about?
A: "No, I really don't."