608 So.2d 533 (1992)
Edward ROPER, Appellant,
v.
STATE of Florida, Appellee.
No. 91-2502.
District Court of Appeal of Florida, Fifth District.
November 13, 1992.
Russell E. Crawford, Orlando, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Bonnie Jean Parrish, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
The question posed here by the appellant concerns the discretion of a trial judge in dealing with a jury request to review crucial trial testimony. The underlying, and dispositive, issue is whether the exercise of that discretion may be avoided without infringing on the parameters of a fair trial.
The defendant, Edward Roper, was charged with various acts of sexual abuse against a minor. At trial the state relied heavily on the testimony of the minor. Roper took the stand and denied that the alleged acts had occurred. During deliberations, the jury asked to "see" the victim's cross-examination testimony. The trial judge conferred with the attorneys as follows:
THE COURT: All right. There has been a question sent out by the jury, and the question  I will read it as it's written. Says, "May we see Bobby's cross-examination?" Originally it *534 read, "May we see Bobby's testimony?" and "testimony" is struck through and written in about it in  was an insertion notation, the word "cross-examination."
In [sic] interpet this as possibly that the jury is under the mistaken belief that some type of transcript has been produced simultaneous or immediately after each of the witnesses have testified or at the end of each day and that there is something to see or read.
I'm going to instruct them that there is not a transcript produced or available at this time and, therefore, there is nothing to see as far as the testimony of Bobby and that they are to rely upon their own collective recollections and remembrances as to questions and answers that were put to each of the witnesses to render their verdict. And then I'll send them back.
Anything either of the attorneys wish to put on the record?
[DEFENSE ATTORNEY] Judge, I would just put on the record that Mr. Roper would like to have the cross-examination read back, if that's what they're really seeking. It's about a 22-minute readback.
THE COURT: Well, if they send out another request to have it read back to them, then we'll address that issue; but I interpret wanting to see his cross-examination as meaning that they think there's something to see, which means something to read, something to go over. And there is nothing to be seen.
If they return a question in reference to wanting to hear the testimony read back to them, then we'll deal with that issue when it's requested.
Anything further?
[STATE]: No, sir.
THE COURT: All right. I will bring the jury back in.
COURT DEPUTY: Jury's entering.
(Whereupon, the jury entered the court-room).
THE COURT: You may be seated.
Okay. Ladies and gentlemen, you have sent out a question, which reads, "May we see Bobby's cross-examination?" Originally read, "May we see Bobby's testimony?" and the word "testimony" was crossed out and the word "cross-examination" was inserted.
The way I read this, it appears that you want to see his cross-examination, that you may be under the mistaken belief that some type of transcript has been produced or is produced at the end of the day or simultaneous to the witness's testimony.
What I am going to instruct you is that there is not a transcript that's produced. Both the court reporters here, one is speaking into something, the other one is using a machine that comes out with symbols and those symbols cannot be read by the jury. They have to be transcribed before they can be read by someone who's not a court reporter or trained in that area.
So I will instruct you at this time, there is no way that you can see his cross-examination. I will also instruct you that you are to rely upon your collective recollections and remembrances as to what each of the witnesses testified to in order to render your verdict.
So at this time I will ask the jury to retire to continue to consider your verdict.
After the jury retired to consider its verdict, the trial court stated to defense counsel:
Okay. In response to your objection, I think by indicating that one of the court reporters is speaking into something, that it would put a reasonable person on notice that it could be read back to them, if that's what they truly want. (Emphasis added).
It is apparent from this comment that the court considered that defense counsel had registered an objection to his response to the jury. Any further objection by defense counsel, therefore, would have been fruitless. See Cox v. State, 563 So.2d 1116 (Fla. *535 4th DCA 1990); Rodriguez v. State, 494 So.2d 496 (Fla. 4th DCA 1986); Flint v. State, 463 So.2d 554 (Fla. 2d DCA 1985). The jury returned shortly and found Roper guilty on all charges.
Florida Rule of Criminal Procedure 3.410 states:
After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who has them in charge and the court may give them such additional instructions or may order such testimony read to them. Such instructions shall be given and such testimony read only after notice to the prosecuting attorney and to counsel for the defendant. (Emphasis added).
This rule, which was formerly mandatory, has given the trial court wide latitude in the area of the reading of testimony to the jury. Haliburton v. State, 561 So.2d 248 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991); Kelley v. State, 486 So.2d 578 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). In Kelley, the Florida Supreme Court cited Simmons v. State, 334 So.2d 265 (Fla. 3d DCA 1976) with approval. In Simmons, as in the instant case, the jury did not ask to hear testimony but merely sent out a request for a typewritten copy of same. The trial court determined that it would take seven hours to read back the requested testimony, and the court reporter stated she was physically incapable of reading the testimony because she was exhausted. The district court found no abuse of discretion because "the jury did not ask to have the testimony read and the reading of the testimony was impractical ..." (Emphasis supplied). Simmons at 267. See also Jenkins v. State, 317 So.2d 114, 116 (Fla. 3d DCA 1975).
Other Florida courts have found error where a trial court leads a jury to believe testimony cannot be read back under any circumstances. In George v. State, 548 So.2d 867 (Fla. 4th DCA 1989), the court held that the trial court had committed reversible error when it instructed the jury that once they began deliberations they could not have the court reporter read back the testimony of the witnesses. In Huhn v. State, 511 So.2d 583 (Fla. 4th DCA 1987), the trial court instructed the jury that there was no provision to have any testimony read back and that they were going to have to remember the testimony as best they could. In reversing for retrial, the appellate court stated:
[Florida Rule of Criminal Procedure 3.410] clearly does not prohibit the trial court from ... having testimony reread; yet we have to assume, as reasonable people, that some, or all, of the jury so understood the trial court's remarks to mean such prohibition existed.
Huhn at 591. See also Biscardi v. State, 511 So.2d 575 (Fla. 4th DCA 1987) (facts and holding similar to Huhn).
The state argues, of course, that Rule 3.410 is absolutely discretionary and that, therefore, the trial court's action was within its sound discretion. Citing Simmons, the state contends that if the jury does not ask that the testimony be read back, but only requests to see a transcript, the court does not abuse its discretion by simply instructing the jury to rely upon their recollections.
We cannot agree with the state. We believe the trial judge's response to the jury's question may well have led the jury to conclude that their only recourse was to rely upon their "collective recollections and remembrances" as to the cross-examination of the minor. Rather than weighing the pros and cons of having the cross-examination read back to the jury, as did the trial judge in Simmons, the trial judge here narrowly focused upon the word "see" (as distinguished from "hear") in the jury's request and deftly side-stepped the problem. As we see it, he employed a semantic shell game effectively negating an option allowed the jury under Rule 3.410. At the very least, the trial judge should have apprised the jury that a method was available to have the cross-examination, or specific portions of it, read to them. Then, if the jury requested it, the trial court could have weighed that request in light of any applicable considerations.
*536 Even if the trial judge erred in refusing to have the testimony read to the jury, the state maintains that any such error was harmless under State v. DiGuilio, 491 So.2d 1129 (Fla. 1986) because "there is no reasonable possibility that the refusal to have the testimony read to the jury after the deliberations had begun contributed to appellant's conviction." We cannot agree. There were a number of discrepancies between the minor's testimony on cross-examination and other testimony in the case, including his own testimony on direct examination. We cannot find, based upon the DiGuilio standard, that the trial court's refusal to even consider the reading of this crucial cross-examination was harmless beyond a reasonable doubt. State v. Clark, 1992 WL 236203, 17 F.L.W. 593 (Fla. Sept. 24, 1992).
REVERSED AND REMANDED FOR NEW TRIAL.
COWART and DIAMANTIS, JJ., concur.