SHAHOOD, J.
The sole issue presented in this appeal is whether the trial court’s refusal to permit a “read back” of the trial testimony of a *930 defense witness constituted reversible error, thereby entitling appellant to a new trial. We hold, under the facts of this case, that the failure of the trial court to allow the “read back” of the trial testimony was reversible error. Thus, we reverse and remand for a new trial.
Appellant, Artemia Vasquez, and co-defendant, Roberto Vasquez, were charged with Burglary of a dwelling with an assault. Appellant filed a Notice of Alibi, claiming that at the time of the burglary, she was at work.
The victim, Michael Meldeau, was at his home in Fort Lauderdale on August 7, 2000 some time between 12:00 and 12:15 p.m., when he heard a noise in the house. He followed the noise to the back door and noticed a woman who was attempting to pry open the lock and break in. He described the woman as 5'2" tall, weighing approximately 180 pounds, and wearing a straw hat, a poncho, and tights or leggings. When the woman pried the lock open and entered the house, Meldeau quickly went to the front door of the house. Once the person came inside the house, Meldeau came face to face with her. He described her as having brown eyes and looking Mexican. Meldeau was getting ready to hit the woman, but thought twice because she was a woman; at that point, she struck him with a screwdriver and he fell, hitting his head on the tile.
The woman ran out of the house and Meldeau followed, yelling at the neighbor’s yard man that he had been robbed. As Meldeau was chasing the woman down the street, a metallic-colored Toyota being driven by a male stopped and the woman got in and rode away. Meldeau got a good look at the driver and estimated that he was approximately thirty five years old and weighed about 160 to 170 pounds. The driver backed all the way down the road, presumably so that Meldeau could not see the car’s license tag.
Meldeau called 911 and described the people. Fifteen minutes later, the police called, informing Meldeau that a vehicle had been stopped and asking him to come identify the occupants. Meldeau subsequently identified the co-defendants at the scene. A straw hat and screw driver were found in the trunk of the vehicle which the police had stopped. In court, he again identified appellant as the woman who broke into his home and her co-defendant as the man driving the “get away” car.
Appellant was employed in the maintenance department at the Marine Towers condominium, which was approximately one block from Meldeau’s residence. Her witness, Dennis Grover, was chief of security at Marine Towers and had worked from 7:00 a.m. to 3:00 p.m. on the day of the incident. According to Grover, appellant’s hours were 8:00 a.m. to 1:00 p.m. Grover testified that Marine Towers had four cameras in operation in August 2000. One of the cameras displayed the only gate into the premises parking lot where all of the tenants entered and two others displayed the only two exits from the premises. According to Grover, the only way to exit the Marine Towers building was through the front lobby door. Grover recalled appellant leaving the Marine Towers building at 1:05 p.m. on August 7, 2000, and not before that time. A videotape showing activity at the front area from 7:52 a.m. to 1:00 p.m. on August 7, 2000 was admitted into evidence. The tape showed appellant entering the building at 7:52 a.m., wearing black pants and a striped shirt; later it showed her entering a linen closet, taking off a white smock, then leaving the building at 12:59 p.m. Grover specifically remembered seeing appellant at work between 12:30 p.m. and 12:56 p.m. on August 7, 2000.
*931 On cross examination, Grover admitted that when appellant is upstairs cleaning she is often out of his sight. He also admitted that, at times, he takes a cigarette break and if, during his break when he is outside, someone exits through the front door, he cannot see them. Grover also agreed that since the cameras pan the room, someone could walk through while the camera was panning and not be seen. Finally, Grover said that he was “over 99 percent sure” that he would have- known if appellant left the building on August 7, 2000.
The jury also heard testimony from other witnesses, which is not relevant to the issue on appeal.
Approximately ten minutes after deliberations commenced, the jury returned with the following questions:
1. “We would like to review Mr. Grover’s testimony.”
2. ‘We would like to have all verification of all service and entrance exits.”
When the court stated that it was going to instruct the jury to rely on their, collective memories of the testimony, defense counsel requested that the testimony either be read back to the jury or transcribed and given to them the following day. The court responded,
And then it says we would like to have all verifications of all service entrances and service exits. That one we don’t have.
Okay. I’m going to tell them over your objection, I assume, to rely on their collective memories.
The court pointed out that the jury had been out for only ten minutes, so they should be able to rely on their memories.
Florida Rule of Criminal .Procedure 3.410 provides, in pertinent part:
After the jurors have retired to consider their verdict, if they request additional instruction or to have any testimony read to them, ... the Court may give them additional instructions or may order the testimony read to them....
Under this rule, the trial court has wide latitude in deciding whether to read testimony to the jury. See Haliburton v. State, 561 So.2d 248, 250 (Fla.1990). In this regard, the trial court may provide a limited or partial readback of testimony requested by the jury as long as ■ that testimony is not misleading. Id.
In Penton v. State, 106 So.2d 577 (Fla. 2d DCA 1958), which is factually similar to this case, the time the crime was committed and the proof of alibi were crucial. Nevertheless, the trial court- denied the jury’s request to hear certain evidence again. On appeal, the court stated, “[t]he fact that the jury wanted to have all of this testimony read directly to them to get the particular time that the defendant was alleged to have passed the checks was very material and we, cannot say that the refusal to read such testimony to them was nonprejudicial.” Id. at 578-79. The court, in reversing, concluded,
■ [w]e realize that the question is a close one but we also realize that there was considerable doubt in the jury’s mind concerning the very testimony which they wished read to them and this testimony was material to the case. The testimony was taken down and the failure of the court to have it read back to the jury at their request was error, and by the very nature of the testimony the error was not harmless.
Id. at 580.
Similarly, notwithstanding the considerable discretion granted to a trial court in this regard, • on the facts of this case, it was error to deny the jury’s request to read back Grover’s testimony. Grover’s *932 testimony was crucial in establishing appellant’s alibi. In resolving the case, it was critical for the jury to clarify the time that appellant was at work, the time that the break-in occurred, and the time that the suspects were apprehended by the officer pursuant to the BOLO.
Consequently, we reverse and remand for a new trial.
REVERSED AND REMANDED.
STEVENSON and HAZOURI, JJ., concur.