TAYLOR, J.
Defendant Onelson J. Francois was tried by a jury and found guilty of burglary of a structure while armed -with a shotgun and attempted robbery with a firearm that he actually possessed and discharged. He raises two issues on appeal: (1) the trial court erred in denying his motion for judgment of acquittal because a witness’s testimony concerning the defendant’s admission was too vague, and (2) the trial court erred in summarily denying the jury’s request for a transcript of testimony without advising the jury that it could have the testimony read back. We reverse only as to the issue concerning testimony read back.
Neam Duffy, the manager of a check cashing store on Sunrise Boulevard in Bro-ward County, Florida, testified that on July 12, 2007, he had closed the store at 9 p.m. and was balancing the vault and counting cash in the “cage” behind an armored, locked door and bulletproof glass when he heard a loud noise. He saw a man jump through the front window and shoot at the door. Duffy heard breaking glass, two gun shots, and banging on the door. He hit the panic button and called 911. He saw a black male, about 5'9" and 190 pounds, holding a shotgun, but because it was dark he could not see his face. A surveillance video of the incident was introduced into evidence at trial.
Cornel Dorsey, who lived on the street next to the check cashing store, was outside with his family. He saw an unfamiliar truck parked in his yard and heard shots fired. Because it was July, he thought they were fireworks. About five minutes later, he saw a black male jump over his fence and hop in the truck. The truck was a white Chevrolet. Dorsey wrote down the tag number and observed that the plate was from either Ohio or Idaho. The tag number was traced to a truck that had formerly belonged to Nathan McKinney. McKinney had recently sold the truck to his co-worker, Michael Zoyes. The truck was used at their place of employment, where the defendant also worked.
McKinney testified that on July 12, 2007, he worked for McKinney Signs and drove a 1993 white Chevrolet pickup truck with Ohio tags. He sold the truck to Mike Zoyes, the sales manager of McKinney Signs. The truck was used for the business and anyone at work who needed to *634 use it would drive it. McKinney identified State’s Exhibit 2, a picture of the truck Dorsey had described.
McKinney testified that the defendant rode with him a lot but he did not know whether the defendant would take the truck home. Zoyes, however, confirmed that both he and the defendant sometimes took the truck home at night. McKinney testified that some time after July 12, 2007, he and the defendant were riding together when the defendant told him about an incident with a shotgun. The defendant said that he had tried to break into a check cashing store on Sunrise Boulevard. McKinney testified as follows:
McKINNEY: On that date exactly we were just riding along nonchalantly. He talked about an incident at hand with a shotgun. He did not go into details. He was upset. My first question was, did you use my truck? He said no. I said okay.
STATE: What did he tell you? He mentioned a shotgun?
McKINNEY: He said getting in a front door with a 12 gauge. I said I don’t remember the details on that. It is over two years now.
STATE: Anything that would refresh your recollection?
McKINNEY: Refresh? Other than the statement at the time that my memory was fresh.
STATE: July 24, 2007, page 305. I want you to read that top portion. When you are done look up at me.
McKINNEY: Oh, yeah. He apparently used a spark plug to try to break the window and shot up with a 12 gauge. He was upset when he couldn’t get in and took off.
STATE: Did he tell you what kind of business?
McKINNEY: Not at that time. I think I asked him later. I think he said a check cashing store. I was curious what kind of door he couldn’t get in.
STATE: What did he tell you he did with the shotgun?
McKINNEY: He said he threw it into the bushes when he took off. I’m going by my statement at the time.
When asked if the defendant told him where the check cashing store was located, McKinney said he thought it was the one on Sunrise Boulevard. On cross-examination, McKinney explained that his conversation with the defendant was short. He said, “On the initial conversation, I think I pretty much dropped it once he said he did not use my truck. Once he said my truck was not involved, I had nothing to do with it.”
The defendant was interviewed by the police. He admitted that he drove the truck on the night of the burglary but denied committing the crimes. He said he spent the night at his girlfriend’s house. Police who responded to the scene found a shotgun — a JC Higgins Mile 20, 12 gauge Sears Roebuck shotgun — and a bookbag between the two fences. The gun was loaded. At the check cashing store, police found a shattered window, broken glass, fired shots, a gun cartridge, a spent shell casing, and a live round. The officers did not remember finding a spark plug at the scene. No DNA evidence or fingerprints linked the defendant to the crime scene. The defendant was arrested on the charges over a year later.
After the state rested, the defendant moved for a judgment of acquittal. The motion was denied. The defendant took the stand and denied being involved in the check cashing store burglary and attempted robbery. He said that he never made any admissions to Nathan McKinney.
*635 During deliberations, the jury requested to see McKinney’s testimony:
COURT: Can we see the testimonial transcripts of Nathan McKinney? The answer is no. You cannot see the transcripts of Nathan McKinney.
Do you agree, State.
STATE: Cannot see them, but read it back.
COURT: Do you agree, Mr. Vargas?
DEFENSE: I agree.
COURT: The answer is no. Bring them in.
(Thereupon, Jury entered at 3:50 p.m.)
COURT: Let the record reflect that the jury is within the courtroom. Be seated.
Members of the Jury, you have asked the following: Can we see the testimony and transcripts of Nathan McKinney?
I am not able to grant your request. Please continue with your deliberations.
In his first point on appeal, the defendant argues that his alleged confession to Nathan McKinney was too vague to support his conviction.[1] He points out that this was the only evidence in the case that connected him to the crimes.
“The trial court determines the admissibility of a confession with regard to whether it was given voluntarily. However, it normally is up to the trier of fact to determine the credibility of the confession, as well as the credit to be given to the witnesses who testify regarding the confession.” Williams v. State, 774 So.2d 931, 933 (Fla. 5th DCA 2001) (citing 24 Fla. Jur. 2d § 483).
In Williams, the defendant confessed to being involved in a robbery in Sumter County on June 8th. Id. Although he did not mention the specific location of the robbery, he identified three other people who participated in the robbery. Id. He also accurately described the manner in which the charged robbery took place. Id. An officer testified that no robberies were reported in Sumter County on June 8th, other than the Best Western robbery by three persons involved in Williams. Id.
The Fifth District Court of Appeal affirmed the denial of Williams’ motion for judgment of acquittal. It held that there was sufficient evidence, in addition to Williams’ confession, to support his conviction of robbery, even though his confession did not contain a location of the robbery. Id. at 934. The court concluded that “there was no view of the evidence in which the jury could have reasonably concluded [the defendant] was involved in a robbery different from the one in [that] case.” Id.
Similarly, here, the defendant’s confession to McKinney was sufficiently specific to the burglary of the check cashing store on Sunrise Boulevard that occurred on July 12, 2007. Although McKinney did not specify the date of the burglary, except to say that his conversation with the defendant occurred after July 12, 2007, the confession was corroborated by other evidence presented at trial, such as the manner in which the burglary was committed. The trial court thus did not err in denying the motion for judgment of acquittal.
The defendant next argues that the trial court erred in denying the jury’s request *636 for a transcript of testimony without advising the jury it could have the testimony read back. For support, he cites our recent decision in Barrow v. State, 27 So.3d 211 (Fla. 4th DCA 2010). There, the jury requested to see all the transcripts of the witnesses; the judge indicated his response would be “there are no transcripts.” Id. at 215. When the state suggested that the judge inform the jury that they could request a read back of the testimony, the judge responded, “No, I don’t do read backs.” Id. Defense counsel also asked the court to inform the jury that they had the right to ask for a read back. Id. at 216. However, the judge denied this request as well and sent a note to the jury stating: “There are no transcripts available for your review. Please rely on the evidence presented during the proceedings.” Id.
In Barrow, we reversed for a new trial after determining that “the trial judge abused his discretion by responding to the jury’s question about the availability of transcripts in the negative, without advising the jury about the potential for read backs of witnesses’ testimony, ignoring the request of both the state and defense.” Id. at 213. We examined Florida Rule of Criminal Procedure 3.410,[2] which concerns a jury’s request to have testimony read to them, and noted that “several Florida cases[3] have found an abuse of judicial discretion when a trial court responds to a jury question about trial testimony or transcripts without letting the jurors know that they may ask for testimony to be read back to them.” Id. at 216-17. We followed these cases in Barrow, believing them to be “more in harmony with Florida’s view of a jury’s role in a criminal trial.” Id. at 218. We stated:
Florida law encourages a jury to make a considered, careful evaluation of detailed evidence. As the Supreme Court has written, the “jury has a perfect right to return to the court room at any time and ask questions that are calculated to shed light on the controversy or that will in any way assist it or the court in developing the truth of the controversy.” Part of a trial judge’s role is to forthrightly make the jury aware of those tools available under the rules of criminal procedure that will assist the jury in arriving at its decision. The judge’s role is to facilitate careful deliberation. Deference should be accorded to a jury’s request to more closely examine the trial testimony.
Id. (internal citations omitted).
As in Barrow, the jury in this case requested to “see” the transcripts. The state agreed that the trial court should inform the jury it could not see them, but that the court should “read it back.” Defense counsel agreed with this, but the court simply told the jury, “I’m not *637 able to grant your request. Please continue -with your deliberations.” Unlike the trial court in Barrow, the trial court here did not announce any policy of not doing read backs. Nonetheless, based on Barrow, the court’s failure to inform the jury that a “readback” of trial testimony could be available upon request was error. Further, as in Barrow, we do not find this error to be harmless. See Barrow, 27 So.3d at 219. The jury requested to see Nathan McKinney’s testimony. McKinney’s testimony concerning the defendant’s alleged confession was the crux of the state’s evidence against the defendant. Thus, it cannot be said beyond a reasonable doubt that the error was harmless.

Reversed and Remanded.

STEVENSON and GERBER, JJ., concur.

. We disagree with the state’s position that this issue was not preserved. Defense counsel made this argument, among others, during his motion for judgment of acquittal, stating, "There was testimony of Mr. McKinney in reference to a conversation he had with [Defendant], But it was a vague statement about a robbery at a check cashing store that did not lead to identification based upon [Defendant].”

. Florida Rule of Criminal Procedure 3.410 (2009) provides as follows:
After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who has them in charge and the court may give them the additional instructions or may order the testimony read to them. The instructions shall be given and the testimony read only after notice to the prosecuting attorney and to counsel for the defendant.

. Roper v. State, 608 So.2d 533 (Fla. 5th DCA 1992); Volk v. State, 754 So.2d 82 (Fla. 4th DCA 2000); Avila v. State, 781 So.2d 413 (Fla. 4th DCA 2001); Rigdon v. State, 621 So.2d 475 (Fla. 4th DCA 1993). We noted that the third district has reached a different result and certified conflict with Hazuri v. State, 23 So.3d 857 (Fla. 3d DCA 2009). The Florida Supreme Court accepted jurisdiction on May 28, 2010. See State v. Barrow, 49 So.3d 747 (Fla.2010).