SALTER, J.
 

 Joel Harris and Judy Harris, the defendants below, appeal a Monroe County Circuit Court order granting a new trial and setting aside a jury verdict in their favor. We reverse and direct the trial court to enter a final judgment in favor of the Harrises in accordance with the jury’s verdict.
 

 I.
 
 Facts and Procedural Background
 

 The plaintiffs below, John E.D. Grunow, Jr. and O.R. Golf Partners, Ltd., owned land next to John Pennekamp Coral Reef State Park in the Florida Keys. The Har-rises also owned a lot next to the Park and the plaintiffs’ lots. Grunow and O.R. Golf were cited by the Florida Department of Environmental Protection for directing non-party landscapers to cut protected mangrove trees without a permit and on Park propei’ty. O.R. Golf and Grunow were required to undertake and pay for a remedial planting program.
 
 [1]
 

 Thereafter, O.R. Golf and Grunow sued the Harrises for negligence, negligent supervision, indemnification, and equitable subrogation based on allegations that the Harrises had ordered mangrove cutting to improve their ocean view. The Harrises were never fined or cited for any such cutting. At the conclusion of a two-week trial, the jury rendered a verdict for the Harrises and the trial court entered a final judgment for them. O.R. Golf and Gru-now moved for a new trial and to set aside the jury verdict, and the trial court granted that motion. This appeal followed.
 

 II.
 
 Analysis
 

 The trial court concluded that a new trial was appropriate for three reasons: violations by counsel for the Harrises of “the Court’s Order in Limine regarding the mention of any evidence of dismissal or settlement of any former Defendant”; counsel’s introduction of “out-of-court statements made by the Defense’s own witnesses for the ostensible purpose of impeaching them with prior inconsistent statements”; and a determination that “Defense Counsel in closing argument specifically and repeatedly emphasized the fact that witnesses were not called by Plaintiffs when the witnesses were available to both parties.”
 

 We review orders granting a motion for new trial for an abuse of discretion, but we have repeatedly recognized that “it takes a stronger showing of error in order to reverse an order granting a new trial than an order denying a new trial.”
 
 Greens to You, Inc. v. Gavelek,
 
 967 So.2d 318, 820 (Fla. 3d DCA 2007) (quoting
 
 Niebla v. Flying Tigers Line, Inc.,
 
 533 So.2d 816, 816 (Fla. 3d DCA 1988)). Applying that stringent standard, and following a thorough review of the trial tran
 
 *189
 
 script excerpts cited by counsel for the appellees to support the trial court’s ruling, we conclude that the order in the case at hand must be reversed and a final judgment entered in accordance with the jury’s verdict.
 

 A.
 
 Motion in Limine; Evidence Regarding Settlements
 

 Grunow and O.R. Golf moved before trial for an order in limine prohibiting any evidence or testimony regarding “settlement/resolution/dismissal of claims formerly asserted against Sanders Building Group, Inc., Marciana Willis, Edward Willis, Jr. d/b/a Wormmy’s Landscape, and Eduardo Willis, III.” The trial court orally granted the motion, stating “we will not tell the jury that the Plaintiff has settled with any party in this case, that there has been a settlement.”
 

 Counsel for the Harrises did not tell the jury that Grunow or O.R. Golf settled with any party or that there had been a settlement or dismissal. The closest the parties came to any such testimony was during the Harrises’ cross-examination of Edward Willis, Jr., who admitted he had talked to an attorney about the mangrove permitting issues and that later he “gave a deposition.” Counsel for the Harrises then asked Willis, “you were concerned, were you not, that Wormmy’s Landscape would be pulled into this case?” Willis responded, “We already were at that point.” Neither the question nor the answer indicated that there had been a settlement or dismissal. Eliciting the response that a non-party witness had been “pulled into this case” does not itself signify that the plaintiffs settled with any party, or that any release or dismissal occurred. And the appellees have not pointed to any other testimony or evidence adduced by the Har-rises that comes any closer to a violation of the order in limine than that response by Mr. Willis.
 

 The trial court’s order on this point cited the Supreme Court of Florida’s decision in
 
 Saleeby v. Rocky Elson Construction, Inc.,
 
 8 So.3d 1078 (Fla.2009). As that decision makes clear, the purpose of the prohibitions against the admission of evidence of settlement is promotion of “Florida’s public policy to encourage settlement,”
 
 id.
 
 at 1084, and the prevention of prejudice — the “practical impossibility to eradicate from the jury’s minds the considerations that where there has been a payment there must have been liability,”
 
 id.
 
 at 1085 (quoting
 
 City of Coral Gables v. Jordan,
 
 186 So.2d 60, 63 (Fla. 3d DCA 1966)). These objectives are embodied in sections 768.041 and 90.408, Florida Statutes (2010). Section 768.041(3) ordinarily prohibits the disclosure to the jury of “a release or covenant not to sue, or that any defendant has been dismissed by order of the court,” and section 90.408 provides that “[e]videnee of an offer to compromise a claim which was disputed as to validity or amount, as well as any relevant conduct or statements made in negotiations concerning a compromise, is inadmissible to prove liability or absence of liability for the claim or its value.”
 

 Neither the order in limine nor these statutes prohibit questions of the kind asked by the Harrises’ counsel — did you sue X corporation and Y? Expressed another way, the fact of the assertion of another claim is not of itself evidence of a settlement, compromise, release, or dismissal of a claim. In this case, the jury had no knowledge that Grunow or O.R. Golf had settled any other claim, dismissed any other party, or received any payment for any such claim. The fact that Grunow and O.R. Golf had sued their own contractors and subcontractors for cutting the mangroves was obviously pertinent to the
 
 *190
 
 Harrises’ defense that they did not hire those contractors or subcontractors or direct them to do any such work.
 

 B.
 
 Impeachment and Prior Inconsistent Statements
 

 Grunow and O.R. Golf objected when counsel for the Harrises sought to impeach a non-party witness, a landscaping contractor, with the witness’s prior inconsistent statements. The witness was called by the Harrises, and not all of his testimony became the subject of impeachment. The prior inconsistent statements were made in a deposition by the witness while under oath, but in another legal proceeding without counsel for Grunow or O.R. Golf then present for cross-examination. A careful review of the direct examination of the -witness at trial discloses that the impeachment violated no rule.
 

 The landscaper was asked, for example, whether Grunow ever told him to “cut as low as you can, as far as out in the water as you can?” The witness answered “no.” When impeached with his prior inconsistent deposition testimony, the witness admitted that some of the trees were lower than he had been told to cut, but Grunow had said “it didn’t matter, the lower the better.” With additional damning testimony being elicited from the landscaper, the plaintiffs objected to allegedly-leading questions, hearsay, impeaching one’s own witness, and allegedly-compound questions. The witness ultimately testified, among other things, that Grunow himself had told the landscaper that Grunow “had flown over those lots and it looked like a bomb had gone off.” The jury was instructed by the trial court to disregard the question and answer.
 

 The same witness testified in other parts of the questioning at trial that he did not recall certain facts, though he had recalled them in the prior sworn testimony. The prior testimony was given several years before the Grunow-Harris trial, and the witness also conceded that he had been using drugs around the time the mangroves were cut. But after initially saying he did not recall “a lot of the particulars,” the landscaper recalled and acknowledged a number of directives by Grunow to cut large trees that the landscaper had left in the middle of the lots, and to cut all the way to the ocean.
 

 It is this latter category of problem — a witness who does not recall a prior statement, rather than one whose prior answer is plainly inconsistent with the witness’s answer to the same question at trial — that engenders a variety of objections and rulings at trial. The correct practice is to begin by asking the witness to read the pertinent parts of the prior statement silently in an effort to refresh the witness’s recollection (section 90.613, Florida Statutes (2010)), and then to re-ask the question. If the witness continues to be unable to recall the incident or facts in question, the trial court may allow questions regarding the prior inconsistent statement for use in impeaching the credibility of the witness. The trial court may also allow questions regarding the inconsistent statement to protect “against the ‘turncoat’ witness who changes his story on the stand and deprives the party calling him of evidence essential to his case.” Charles W. Ehrhardt, 1 Fla. Prac.,
 
 Evidence
 
 § 801.7 (2011 ed.).
 
 [2]
 

 Of the twelve supposedly “improper impeachment” questions that have been identified by Grunow and O.R. Golf, however,
 
 *191
 
 only one fell squarely into this category, and that exchange was inconsequential in the context of the case as a whole (involving a date also testified to by other witnesses). Other questions and answers were not the subject of an objection or were appropriate for impeachment because of a demonstrable inconsistency.
 

 The witness who gave the prior statement and testified at trial was in court. That witness was cross-examined by counsel for Grunow and O.R. Golf,
 
 [3]
 
 and the witness’s vacillation and prior drug use were specifically criticized by counsel during the Grunow and O.R. Golf closing argument (which sarcastically dubbed him the “star witness”). Section 90.608 allowed counsel for the Harrises to impeach without a showing that the witness was adverse, and regardless of whether the witness’s testimony was prejudicial to the Harrises’ case.
 
 [4]
 

 On this record, the appellees’ reliance on
 
 Morton
 
 is misplaced. The Supreme Court of Florida observed in that case that “no single rule can be delineated to cover all of the circumstances under which parties will seek to impeach their own witnesses.”
 
 Morton,
 
 689 So.2d at 264. In the present case, as in
 
 Morton,
 
 “it cannot be said that [the party calling the witnesses] called these witnesses primarily for the purpose of introducing inadmissible hearsay evidence.”
 
 Id.
 
 The landscaping contractor called by the Harrises in their case gave a variety of substantive testimony quite apart from the prior sworn statement and the in-trial impeachment related to it.
 

 C.
 
 Closing Argument
 
 — “Missing
 
 Witnesses”
 

 Grunow and O.R. Golf also argue that “defense counsel’s closing argument that the Plaintiffs failed to produce certain witnesses at trial created an impermissible missing witness inference,” citing
 
 Haliburton v. State,
 
 561 So.2d 248 (Fla.1990). A review of the closing argument discloses that the plaintiffs did not object to the Harrises’ references to persons identified during the testimony of other witnesses but not called by the plaintiffs, and that no motion for mistrial was made regarding the allegedly-improper argument. Counsel for Grunow and O.R. Golf addressed the Harrises’ weight of the evidence/missing witnesses argument in rebuttal:
 

 Don’t need 50 witnesses. Don’t need 100 witnesses. We have it out of the mouths of the Defendants themselves. They told you, they cut. And if they cut anything, they own it.
 

 The four requirements for granting relief in a civil case based on allegedly-improper, but unobjected-to, closing argument are detailed in
 
 Murphy v. International Robotic Systems, Inc.,
 
 766 So.2d 1010 (Fla.2000). First, the challenged argument must be improper. In the case at hand, the defense addressed the plaintiffs’ burden of proof and the
 
 categories
 
 of witnesses who were not called by Grunow and O.R. Golf (unnamed “other cutters” and State and County environmental regulators). One uncalled mangrove cutter was mentioned by name (Mario Navar-rette), but there is nothing in the record to confirm whether or not he was equally available to both sides of the lawsuit.
 

 
 *192
 
 Second, under
 
 Murphy,
 
 the argument must be harmful — “so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury.”
 
 Id.
 
 at 1029. Third, the improper argument must be incurable:
 

 Specifically, a complaining party must establish that even if the trial court had sustained a timely objection to the improper argument and instructed the jury to disregard the improper argument, such curative measures could not have eliminated the probability that the unob-jected-to argument resulted in an improper verdict.
 

 Id.
 
 at 1030.
 

 Fourth, the complaining party must also show that “the argument so damaged the fairness of the trial that the public’s interest in our system of justice requires a new trial.”
 
 Id.
 
 In this case, even if we considered the defense comments on the plaintiffs’ burden and lack of relevant evidence on liability to be improper (which we do not), the three remaining requirements under
 
 Murphy
 
 were not satisfied.
 

 D.
 
 Additional Arguments
 

 The Harrises also argue that their motion for directed verdict should have been granted based on the statute of limitations, the absence of proof that the Harrises cut mangroves or directed others to cut mangroves on the Grunow and O.R. Golf lots, and the payment of the Grunow and O.R. Golf damages claims by others. Grunow and O.R. Golf maintain that the limitations period was tolled by the conduct of the Harrises, that there was evidence regarding the Harrises’ alleged directives for the cutting, and that payments by others did not cover all of the damages suffered or claimed by Grunow and O.R. Golf. These alternative arguments are moot in light of our conclusions regarding the jury’s verdict and the new trial order, and we have neither considered nor decided them.
 

 III.
 
 Conclusion
 

 The normally-cold record on appeal in this case reflects considerable heat. The parties were neighbors disputing civil liability for the consequences of repugnant environmental violations. The witnesses allegedly involved in the mangrove decimation had obvious reasons to prefer to be somewhere other than the courtroom.
 

 The heat of the battle is also reflected in the strident findings warranting a new trial as submitted by counsel for Grunow and O.R. Golf and entered by the trial court. But applying even the strict standard we impose upon ourselves for the review of a trial court’s exercise of discretion in ordering a new trial, those findings are not supported by the record. The Harrises obtained a verdict without violating the order in limine regarding settlements, without engaging in prohibited impeachment, and without improper “empty chair” commentary regarding witnesses not called. Counsel for Grunow and O.R. Golf estimated that the jury took less than an hour to reach their verdict after a two week trial, and that is its own commentary on the weight of the evidence. The parties did not receive a perfect trial, but the record demonstrates unequivocally that they received a fair trial.
 

 The order granting a new trial is reversed, and the case is remanded for the entry of a final judgment in accordance with the jury’s verdict.
 

 [1]
 

 . We addressed other aspects of the same underlying incident (involving the Iandscaper's insurance coverage) in
 
 Nova Casualty Co. v. Willis,
 
 39 So.3d 434 (Fla. 3d DCA 2010).
 

 [2]
 

 . Professor Ehrhardt’s analysis cites Federal Rule of Evidence 801 and several federal cases for this proposition; the pertinent elements of that rule are identical to section 90.801.
 

 [3]
 

 . During that cross-examination, counsel for Grunow and O.R. Golf also used the witness's prior sworn statement to establish facts relating to the mangrove cutting and the witness’s prior inconsistent answers.
 

 [4]
 

 .
 
 Morton v. State,
 
 689 So.2d 259, 262 (Fla.1997); Juan Ramirez, Jr.,
 
 Florida Evidence Manual,
 
 Ch. 6, § 608.01[b][i][D] (2d ed. 2010). The rule was otherwise until 1990, when predicate requirements for surprise and prejudice were required in order to impeach one's own witness.