# Third District Court of Appeal

## State of Florida

Opinion filed June 01, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1461
Lower Tribunal No. 12-14697
_____

## Dismex Food, Inc., a Florida corporation, and Elkin O. Tellez,
Appellants,

vs.

## Bobby U. Harris,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Ronald C. Dresnick, Judge.

Conroy Simberg, and Hinda Klein (Hollywood), for appellants.

The Weinger Appellate Firm, and Daniel S. Weinger (Plantation), for appellee.

Before SUAREZ, C.J., and ROTHENBERG and EMAS, JJ.

ROTHENBERG, J.

Dismex Food, Inc. and Elkin O. Tellez (collectively, "the defendants") appeal the trial court's final order granting Bobby U. Harris's ("Harris") motion for a new trial, which was based on the trial court's finding that Harris was prejudiced and denied a fair trial by the cumulative effect of defense counsel's violation of the sequestration rule and the defense witness's violation of the trial court's ruling confining his testimony to the opinions in his report. Because this finding is not supported by the evidence in the record, we reverse the order granting Harris a new trial.

## BACKGROUND

In February 2011, Harris was rear-ended by an eighteen-wheeler truck operated by Elkin O. Tellez, an employee of Dismex Food, Inc. Following the accident, Harris was treated by a chiropractor and two doctors, Dr. Jillian Cameron and Dr. Martin Stauber. In March 2011, the chiropractor referred Harris to a radiologist and obtained an MRI ("the March MRI"), and in May 2011, Dr. Cameron, who was apparently unaware of the first MRI, ordered another MRI ("the May MRI"). Neither the radiologist that Harris was referred to by the chiropractor nor Dr. Cameron suggested that Harris undergo surgery. In December 2011, Harris was evaluated by Dr. Stauber, who performed a physical examination, reviewed the May MRI, and concluded that Harris suffered from a lower back spinal ligament injury that would require surgery. A few months after Dr. Stauber

2

performed the surgery, Harris sued the defendants for negligence. The defendants admitted fault, but contested causation and damages.

Dr. Elliot Lang, the defendant's expert witness at trial, completed a certified medical examination of Harris pursuant to rule 1.360 of the Florida Rules of Civil Procedure. In his report ("CME report"), Dr. Lang stated that, among other things, (1) the image of Harris's spine in the March MRI was "essentially normal"; (2) there was evidence of an injury in the May MRI that was not present in the March MRI; (3) an intervening incident must have caused the injuries to Harris's spine that were only visible in the May MRI; (4) Harris did not require surgery; and (5) Harris had a 0% chance of permanent impairment as a result of the February 2011 accident.

Prior to opening statements, the trial court considered Harris's motion in limine and ruled that Dr. Lang was not permitted to testify as to new opinions that were not included in his CME report. Thereafter, Harris invoked the sequestration rule set forth in section 90.616 of the Florida Statutes. The trial court told the parties that they would be responsible for their own witnesses.

At trial, only Harris, Dr. Stauber, and Dr. Lang testified. Dr. Stauber testified, in part, that he would not have relied on the March MRI due to its poor diagnostic quality. This opinion was presented for the first time when Dr. Stauber testified at trial. Following Dr. Stauber's testimony, defense counsel conferenced

3

with Dr. Lang about the testimony he would give the next day. While the record does not clearly reflect what was said in this conference, there is record evidence supporting the finding that Dr. Lang and defense counsel discussed Dr. Stauber's testimony with regard to the quality of the March MRI. The following day, Dr. Lang testified, consistent with his CME report, that: (1) the March MRI was of diagnostic quality; (2) he did not believe that the March MRI depicted an acute injury; and (3) because the May MRI showed evidence of bruising that was not present in the March MRI, there must have been an intervening injury between March and May.

The jury returned a verdict awarding Harris $48,428.00 in past and future medical expenses but found that Harris did not sustain a permanent injury. Harris moved for a new trial, arguing that defense counsel's conference with Dr. Lang regarding Dr. Stauber's testimony amounted to a violation of the sequestration rule, and that Dr. Lang's testimony regarding the diagnostic quality of the March MRI amounted to an opinion not contained in his CME report, in violation of the trial court's ruling on Harris's motion in limine.[1]

---

[1] Harris also argued at the hearing on Harris's motion for a new trial and now on appeal that Dr. Lang's testimony regarding normal variations in the whitish areas in the MRIs constituted a new opinion. However, the trial court expressly rejected this argument at the hearing for a new trial. We agree with the trial court and decline to discuss that portion of Dr. Lang's testimony further.

At the hearing on Harris's motion for a new trial, defense counsel argued that Harris was not prejudiced by the alleged violations of the sequestration rule and the trial court's ruling on Harris's motion in limine. However, the trial court responded by stating that, ". . . in terms of what's the prejudice, I'm going to say what's the prejudice of retrying this case?" Throughout the hearing, the trial court never identified what prejudice Harris suffered. After the hearing, the trial court entered an order granting Harris a new trial without specifying the grounds for its decision, and the defendants appealed. It is only after we relinquished jurisdiction pursuant to Florida Rule of Civil Procedure 1.530(f)[2] that the trial court entered an amended order finding that Harris was prejudiced and denied a fair trial due to the cumulative effect of (1) defense counsel's violation of the sequestration rule, (2) Dr. Lang's subsequent manipulation of his testimony to counter that of Dr. Stauber, and (3) Dr. Lang's testimony as to matters that were outside of the scope of his CME report, in violation of the trial court's ruling on Harris's motion in limine.

## ANALYSIS

An appellate court must review a trial court's entry of an order granting a new trial for an abuse of discretion. Allstate Ins. Co. v. Manasse, 707 So. 2d 1110, 1111 (Fla. 1998). However, the trial court will abuse its discretion if it enters an

---

[2] "All orders granting a new trial shall specify the grounds therefor." Fla. R. Civ. P. 1.530(f).

5

order granting a new trial based on findings that are not supported by the record. Moore v. Gillett, 96 So. 3d 933, 938 (Fla. 2d DCA 2012) (stating that "the grant of a new trial is not an appropriate sanction for a dereliction by counsel that could not have affected the verdict"); Harris v. Grunow, 71 So. 3d 186, 192 (Fla. 3d DCA 2011).

As stated by the Florida Supreme Court, "the rule of sequestration is intended to prevent a witness's testimony from being influenced by the testimony of other witnesses in the proceeding." Wright v. State, 473 So. 2d 1277, 1280 (Fla. 1985). Thus, if the sequestered witness's testimony did not substantially differ from what it would have been had the sequestration rule not been violated, then any claim that the violation of the sequestration rule warrants a new trial or a mistrial is meritless. See Mendoza v. State, 964 So. 2d 121, 133 (Fla. 2007); see also Steinhorst v. State, 412 So. 2d 332, 336 (Fla. 1982) (holding that the test to be applied when determining whether a witness may be excluded on the basis of a sequestration rule violation is the extent to which the testimony of the witness "differed from what it would have been had he not heard testimony in violation of the rule").

In the instant case, although the record does not clearly demonstrate a violation of the sequestration rule, given our deferential standard of review, we accept the trial court's finding in its amended order granting a new trial that

defense counsel violated the rule when he spoke with Dr. Lang about Dr. Stauber's testimony. However, we reject the "harsh result" that a technical violation of the sequestration rule requires the automatic exclusion of a witness, let alone a new trial. See Baker v. Air-Kaman of Jacksonville, Inc., 510 So. 2d 1222, 1223 (Fla. 1st DCA 1987). We therefore examine the record to determine whether Dr. Lang's testimony substantially differed from what it would have been without the violation of the sequestration rule.

The trial court identified two parts of Dr. Lang's testimony that allegedly differed as a result of the violation of the sequestration rule: Dr. Lang's testimony (1) as to the diagnostic quality of the March MRI, and (2) that the MRIs did not show evidence of an acute injury. After reviewing the record and Dr. Lang's CME report, we conclude that in neither instance did Dr. Lang's testimony substantially differ from what it would have been had he not been told that Dr. Stauber had testified that the March MRI was of insufficient diagnostic quality.

First, because Dr. Lang's CME report contains several diagnostic findings based on his review and the radiologist's review of the March MRI, it cannot be reasonably argued that Dr. Lang did not believe that the March MRI was of sufficient diagnostic quality. In his report, Dr. Lang detailed his records review, including his review of Dr. Keith Mullenger's report regarding the March MRI (Dr. Mullenger is the radiologist who read the March MRI), and the records of

7

Harris's treating physicians Dr. Cameron and Dr. Stauber. Specifically, Dr. Lang reported that the radiologist found that the March MRI of "[t]he cervical spine showed some decreased lordosis[,] . . . the lumbosacral showed disc bulges with mild stenosis at L4-5 and L-5-S1 bulge . . . [with] no evidence of cervical spinal canal or neural foraminal stenosis and no fracture or disc herniation were seen in the cervical spine with reversal of the cervical lordosis consistent with spasm."

With respect to his review of Harris's treating physicians' records, Dr. Lang noted that Harris withheld and did not provide these doctors with the March MRI, which Dr. Lang stated in his report **showed that "[Harris's] lumbar spine [was] essentially normal."** (emphasis added). Dr. Lang also specifically found in his report that as a result of Harris's failure to inform his doctors of the March MRI, Dr. Cameron ordered the additional and **unnecessary May MRI**.

Lastly, Dr. Lang's report included his own review of the March and May MRIs. Dr. Lang concluded that the March MRI showed anterior C5 osteophytes and posterior osteophytes with decreased lordosis; minimal bulges at L4-5 and L5-S1 with slightly decreased lordosis; no posterior ligament abnormalities; and the disc spaces otherwise appeared to be normal. As to the edema noted at the posterior right iliac crest region and near the sacroiliac joints noted on the May MRI, Dr. Lang stated that the March MRI "did not show this" and thus he opined that because Harris had continued to do heavy duty work all throughout the course

8

of his treatment, he may have injured himself after the March MRI had been performed.

As these findings regarding the March MRI reflect, Dr. Lang and the radiologist who read the March MRI, certainly believed the March MRI was of sufficient quality to perform their analysis and to reach their detailed conclusions. Thus, inherent in Dr. Lang's report was his opinion that the March MRI was of sufficient diagnostic quality, and it defies logic and common sense to suggest that Dr. Lang's testimony at trial would not have included his opinion about the quality of the films he reviewed.

We therefore conclude that Dr. Lang's testimony regarding the diagnostic quality of the March MRI cannot reasonably be considered a new opinion in violation of the trial court's ruling on Harris's motion in limine or that Dr. Lang's testimony substantially differed from what it would have been had he not been informed that Dr. Stauber had testified that the March MRI's quality rendered it of no diagnostic value. We also reject the trial court's finding that Dr. Lang's testimony that the MRIs did not show evidence of an acute injury was a new opinion or an opinion that substantially differed from what Dr. Lang would have testified to but for the alleged violation of the sequestration rule.

## CONCLUSION

9

Because the record reflects Dr. Lang's testimony was consistent with his CME report; his testimony did not substantially differ from what it would have been without the alleged violation of the sequestration rule; and Dr. Lang did not testify to matters outside of the scope of his CME report; we conclude that the trial court abused its discretion by granting Harris a new trial. We therefore reverse the trial court's amended order granting a new trial and remand for the entry of a final judgment in accordance with the jury verdict.[3]

Reversed and remanded.

---

[3] We reject the trial court's finding in its order granting a new trial that the jury verdict of $48,428 was against the manifest weight of the evidence and was itself evidence that Harris was prejudiced and denied a fair trial because "a trial judge may not substitute its judgment for that of the jury on the matter of damages . . . ." Arab Termite & Pest Control of Fla., Inc. v. Jenkins, 409 So. 2d 1039, 1041 (Fla. 1982); see also Skopit v. Neisen, 616 So. 2d 505, 505 (Fla. 3d DCA 1993).